LEE'S ADM'RS v. FONTAINE & FREEMAN, use, &c.

1. Where a retiring partner sells his interest in the firm to a co-partner, and several others, who unite in the same business, the new firm stipulating to pay the debts of their predecessors, the stipulation being founded upon a sufficient consideration, does not come within that provision of the statute of frauds, which declares that no action shall be brought upon a promise to answer for the debt, &c. of another person.

2. The reception of a promissory note in liquidation, or even in payment of an open account, will not discharge the debtor from the original cause of action, if it is invalid as to some of the parties who appear to have joined in making it, because the debtor who made it, was not authorized to bind them; and although a judgment has been recovered upon the note against the debtor who made it, or the note has been negotiated, yet the parties liable to pay the account, may be sued thereon, if the judgment has been unproductive.

3. Where a retiring partner sells his interest in a mercantile partnership to a third person, who undertakes to pay the debts of the firm, a creditor of the firm cannot, in virtue of this undertaking, maintain an action upon his demand against the incoming partner and his associates.

4. Where a principal authorizes his agent to obtain an advance of money for him, upon giving a certain security for its repayment, and the latter not being able thus to obtain the money, procures a credit for his principal which answers the purpose for which the money was intended; if the principal, upon being informed of what his agent had done, does not object, but acquiesces, he will be bound by the transaction.

5. Where a party makes out an account against a partnership, for some of the items of which only one of the partners is liable, if upon a separate judgment against this partner, the security given by him for the amount of the entire account, a sum has been collected not more than sufficient to pay the items for which he alone is responsible, it may be appropriated to their payment, and the partnership made liable for those items which are a joint charge.

6. One debtor who is primarily liable, cannot object that another who is jointly liable with him, has not been sued at an earlier day, upon a separate security given by the latter.

7. In an action upon an open account against several persons, it cannot be objected that a note given by one of them in the name of all, but without their authority, in liquidation of the account, was not delivered up and cancelled—it being admitted by the plaintiffs that it was not the note of

any other person than the defendant who made it, and it further appearing that a judgment had been recovered on it against him, which was unsatisfied.

Error to the Circuit Court of Sumter.

This was an action of assumpsit at the suit of the defendants in error. The declaration contains eight counts, the three first of which are on a promissory note for the sum of $3,623 18, dated the 26th June, 1837, and payable the 1st March next thereafter; the other counts all charge a liability without reference to any writing, and are sufficiently comprehensive to tolerate a recovery, if the proof authorizes it.

The defendants denied by plea, verified by their oath, that their intestate made the note in the declaration, and to the other counts pleaded *non assumpsit*, and payment. Thereupon the truth of the first plea was admitted, issues were joined to the second and third; the cause as to the five last counts was submitted to the jury, who returned a verdict for the plaintiff and judgment was rendered accordingly. On the trial, a bill of exceptions was sealed at the instance of the defendants.

McConnell, a witness whose deposition was taken at the plaintiff's instance, states that Abrahams, Lee & Co. were indebted to the plaintiffs, Fontaine & Freeman, on the 26th June, 1837, in the sum of $3,446 36, exclusive of interest, the balance of an account. On that day the account was closed, by the payment of *$150 in cash*, and the note of A. L. & Co. for the sum of $3,623 18, payable on the 1st March, 1838—being the balance of principal and interest. The plaintiffs were commission merchants and factors, frequently accepting bills, shipping goods, advancing cash against promised shipments of cotton from the interior. A. L. & Co. were country merchants and storekeepers, and their firm was composed of J. A. Abrahams, William Lee, and Richard Yarborough. Witness considered the two latter the responsible and monied men of the concern.

Witness is familiar with the hand-writing of William M. Patterson, who was book-keeper for the plaintiffs when A. L. & Co's indebtedness to them was incurred, and all the items

in the account, up to May, 1837, were entered by him in the books of the plaintiffs—Patterson has since died. The account in favor of the plaintiffs, is much the greater part of it made up of cash advanced by them through the witness.

In June, 1837, when witness called at the store of J. A. A. in Livingston, and received the note in controversy in *liquidation*, he knew that the firm of A. L. & Co. was dissolved. He did not call on the defendant's intestate, but took the note from Abrahams in its present form; because he thought it in accordance with commercial law and usage.

Abrahams, who was also examined as a witness by the plaintiff, stated that one Terry and himself were partners, in the fall of 1836, and previously; in November or December of that year, Lee and Yarborough bought Terry's interest in the concern, came in and made the firm of Abrahams, Lee & Co. This change took place under a stipulation that the new firm should have all the assets, and "assume to pay all the debts" of Abrahams & Terry; the assets were accordingly received, and the new firm "assumed to said Terry to pay its debts." By the terms of the new co-partnership, L. was to advance to A. L. & Co. $8,000 or $10,000, with the option when he retired, to receive his money with twelve per cent. interest, or one third of the profits that might be made. A., L. & Y. continued in partnership under the style of A. L. & Co. until February or March, 1837, when L. withdrew, and T. again came in, and formed the firm of J. A. A. & Co. which "agreed with L. to pay and save him harmless from all his liabilities as one of the firm of A. L. & Co." Thereupon J. A. A. & Co. received all the assets of that concern.

When the firm of A., L. & Co. was formed, A. & T. owed a large amount of debts in New York, for which the intestate promised to provide the means of payment, and accordingly wrote to his commission merchant at Mobile, requesting him to advance to J. A. A. some $8,000 or $10,900, upon his, L's, crop of cotton. If intestate's factor could not make the advance, then witness was directed to call upon the plaintiffs, who had been the commission merchants of A. & T., for that amount of money, and if this could be effected, intestate would ship them his crop of cotton.

Witness could not obtain the money from either house, but

drew on the plaintiffs in the name of A. L. & Co. to pay the debts due in New York. These drafts were paid by the plaintiffs, without having been placed in funds for that purpose. When the witness returned from Mobile, he informed the intestate what he had done, to which he made no objection that witness remembers.

When T. withdrew from the firm of A. & T., the concern was indebted to the plaintiff the sum of $541 80; A. L. & Co. contracted no liability with them in respect to the drafts stated above. The account exhibited by the plaintiffs, and in respect to which McConnell testifies has an item for $152 44, which the witness, Abrahams, states was for groceries furnished to him individually, and he thinks the plaintiffs were so informed when they sent them.

Witness admits that McConnell came to Livingston on the 26th June, 1837, and applied to him to settle the account exhibited at the trial, saying that the intestate, who lived some miles from that place, had been called on by witness and refused to have any thing to do with the account. McConnell then proposed to witness to give him a note for the balance claimed by the plaintiffs; witness doubting his authority to sign the name of A., L. & Co. told McConnell he had better consult a lawyer, whose office was pointed out; McConnell went to the office and returned, saying that the attorney referred to, said, he (witness) was authorized to make the note in the firm name; and it was accordingly made.

Though no particular words were used, indicating such an agreement, witness understood that the note was taken in payment of the plaintiffs' account—he considered the crediting of the account by the note, as much a satisfaction as if the cash had been paid.

Witness stated that he continued solvent until 1839— $1701, besides costs, has been made by the sale of his property to satisfy a judgment against him on the note; that suit was brought in March, 1842, and judgment recovered in September of the same year.

Plaintiffs' attorney offered to cancel the note at the trial, but offered no evidence of his authority to do so, than such as was implied from his employment as an attorney at law.

It was also proved, that a dissolution of the firm of A. & T.

was printed in a newspaper published in the town where the concern had done business, on the 5th December, 1836 ; and in the same advertisement the formation of the new partnership, under the style of A., L. & Co. was announced. This was all the evidence in the cause.

The court charged the jury—1. That if the firm of A., L. & Co. took the assets of A. & T. and agreed with Terry to pay its debts, it was a sufficient undertaking, and was not within the statute of frauds, as to any thing involved in this case. 2. That ordinarily it would not come within the scope of the partnership business of one firm to pay the debts of another; but where one concern had received the assets of another upon an agreement to pay its debts, the payment of the debts assumed, would come within the scope of partnership business. 3. That the note taken by the plaintiffs' agent must have been received in payment of their account, or they have a right to resort to their remedy on the account, as though the note had never been made. 4. To make the note a satisfaction of the account, there should have been an express agreement to that effect—some conversation between the parties, indicative of such an intention, the taking of the note and surrendering the account were insufficient to show that the latter was satisfied. But afterwards, upon the request of the defendant's counsel, the jury were instructed that they might look to the account for what it was worth, as tending to show an express agreement.

The defendant's counsel then prayed the court to charge the jury—1. That if they should believe from the balancing of the account offered in evidence, and from the other testimony, that the note was taken in payment thereof, the plaintiffs cannot recover on the account ; which instruction was not given as asked, but the jury were charged that the balancing of the account, together with what Abrahams might have understood, were not sufficient in themselves to bar a recovery on the account, unless there was an express agreement proved, to take the note in payment of the account. But the jury might consider the balancing of the account with the other evidence, to ascertain if there was such an express agreement. 2. If the plaintiffs might, with ordinary diligence have made the money of Abrahams, and held the

note without bringing suit, until he became insolvent, they cannot recover on the account. 3. The offer of the plaintiffs counsel to cancel the note as to the intestate and Yarborough, was not sufficient; the judgment against Abrahams should have been satisfied, or something should been done equivalent to the cancellation of the note as to him.

The court refused to give the several charges prayed; and thereupon the defendant excepted, as well to the instructions given to the jury, as to the refusals to charge.

E. W. PECK and R. H. SMITH, for the plaintiff in error, made the following points:

1. The undertaking of A. L. & Co. with Terry, was an agreement to indemnify him, and as to their creditors, or those of A & T was void under the statute of frauds. If there was a sufficient consideration for the promise, the right to enforce a performance, did not inure to the creditors. [3 Stewt. & P. Rep. 212; 1 Ala. Rep. 521; 4 Id. 390, 230; 8 Porter's Rep. 334; 4 Johns. Rep. 222; 8 Id. 376; 10 Id. 412; 4 Cow. Rep. 432; 20 Wend. Rep. 201; 7 Porter's Rep. 62; 7 Ala. Rep. 794.]

2. The stipulation with T. to pay the debts of A. & T. did not give to the members of the new firm severally the authority to contract new debts in order to discharge the old ones. Such a power does not come within the ordinary scope of partnership dealings. Lee did not authorise A. to procure the acceptances of the plaintiffs, but only to obtain an advance upon his cotton. [3 Stew. Rep. 23.] It cannot be inferred from the failure of Lee to object, when informed by A. what he had done, that he sanctioned it—he did object as soon as he was called on for a settlement; an objection if sooner made would have availed nothing. [2 Ala. Rep. 502.] The publication in the gazette in respect to the dissolution of the old firm and the formation of the concern of A. L. & Co. was signed by A. alone, does not disclose a consideration for the undertaking to pay the debts of A. & T., and consequently does not relieve the case from the statute of frauds. [1 Stewt. Rep. 51; 7 Porter's Rep. 62; 7 Ala. Rep. 791.] There can be no evidence of part performance to avoid the

objection—[2 Stew. Rep. 21]—nor can the supposed promise be assisted by parol evidence.   [2 Ala. Rep. 571.]

3. The note must have been taken in lieu of the account, and so far satisfies it that no action can be maintained thereon.   [Minor's Rep. 299; 1 Stewt. Rep. 220; 2 Id. 498; 1 Stewt. & P. Rep. 446; 2 Porter's Rep. 401; 9 Id. 146; 7 Ala. Rep. 955.]   The testimony of McConnell as to the manner in which he received it, noting on the account that it was received in "liquidation;" and the testimony of Abrahams that he considered the note was received in payment of the account, all show that the account was extinguished.   Instead of leaving to the jury to say whether the note was taken with such an intention, the court assumed that nothing would do but an *express understanding in words.*   [1 Stew. & P. Rep. 446; 2 Hayw. Rep. 151; 21 Wend. Rep. 450; 3 Nev. & M. Rep. 167.]

It is insisted that taking a negotiable note, and negotiating it, prevents a resort to the account.   By indorsing the note the payee gave up the right to sue on it, and consequently could not maintain an action on the account.   [3 Cranch's Rep. 311; 2 Dall. Rep. 100; 1 Johns. Rep. 34; 8 Id. 149, 202; 10 Id. 104, 366; 7 Ala. Rep. 525.]   It makes no difference that no specific charge was prayed on this point, for the court had instructed the jury in opposition to the view we have expressed, and considered the indorsement of the note as immaterial, if there was no express agreement to take it in satisfaction of the account.   *Prima facie,* the note was taken in payment, and the *onus* of proving the reverse rested on the plaintiffs.   [3 Nev. & Man. Rep. 167; 12 Johns. Rep. 409; 4 Esp. Rep. 31; 5 Id. 121; 2 Hall's Rep. 447; 2 Bos. & Pul. Rep. 518.]

If Lee was liable, the laches of the plaintiffs below discharged him, if the money could have been made of Abrahams.   [1 Porter's Rep. 260; 2 Id. 401, 411; 7 Id. 175; Minor's Rep. 299; 1 Stewt. Rep. 220; 4 S. & Porter's Rep. 201; 6 Ala. Rep. 678; 7 Id. 953; 12 Johns. Rep. 409; 2 Hall's Rep. 548; 1 Yerg. Rep. 31; 3 Nov. & Man. Rep 167; 2 W Wilson's Rep. 253.]   But if this be not so, the recovery of the judgment against Abrahams bars a resort to

the account.    [4 Johns. Ch. Rep. 566 ; 13 Mass. Rep. 148 ;
21 Wend. Rep. 450 ; 9 Sergt. & R. Rep. 142.]

Lee refused to adjust the debt when called on by the plain-
tiffs agent, and the latter notwithstanding took the note from
Abrahams; this operated as a release of Lee.    [4 S. & Porter's
Rep. 501.]    And this misapprehension of the law by the
plaintiffs' agent, cannot relieve them from the consequences
of the act.    [7 Porter's Rep. 175.]

There certainly can be no recovery in this case, unless the
note on Abrahams has been cancelled.    The offer to cancel,
as shown, was ineffectual; because it proposed to cancel no-
thing, and the power to do the act was not within the scope
of the authority possessed by an attorney at law.    [4 Dess. R.
45 ; 3 Stew. Rep. 23, 27 ; 1 Porter's Rep. 212.]

BLISS & BALDWIN for the defendants in error.—I. The ac-
count sued on, is not, as to Lee, within the statute of frauds.
It was not the promise to pay the " debt of another"—Abra-
hams being a common partner.

2. The consideration having been the transfer of the as-
sets of the old firm : as between Terry and the others, it was
an *executed* promise.    It was as if money had been deposited
with the new firm to pay the debts of the old.    [8 Porter,
333 ; 4 Ala. Rep. 230 ; 6 Ib. 694 ; 7 Ib. 346.]

3. As to all the account, except three items, it is for money
advanced one of the partners during the existence of the firm.
It is immaterial what became of the money.    The partners
are all bound on a bill drawn by one in the firm name.    Chit.
on *Bills*, 45, et seq. and note ; Story on *Part.* 161, 152, note
2 ; see also Collyer on Part. 307—that a bill drawn by the
new firm on a contract made with the old, is a ratification of
the act, and binds the partnership.

Lee sanctioned this transaction.    He did not signify dissent
when informed of it, and this binds him of itself.    [Story on
Agency, § 90, p. 254-5-6 ; 6 Ala. 527 ; 2 Penn. R. 160.] So,
" privity and silence," proves previous authority.    [8 Vesey,
540 ; 2 M. & S. 484; 3 Camp. 478.]

It was enough that the money was applied to the use of the
firm, with Lee's consent and approbation.    [11 Wend. 475.]

4. As to the items for $541 80, balance of account of old

firm $370 75, and the grocery bill, in all $1064 98, (the grocery bill is a mere abuse of authority,) Abrahams was liable at all events.   Judgment was against him, and more than this amount made out of him individually.    Plaintiffs have a right to appropriate.   In fact the law itself applies it to the individual debt first.   [Chit. on Con. 757 ; Story on Part. 243, § 157 ; and particularly 2 Harrington's R. 172 ; 2 N. H. Rep. 196.]

5. The error in the charge, if any, worked no injury to the plaintiffs in error, and they cannot complain.   *The law having appropriated other money to the payment of these items, they were discharged ; and the jury did not find against, or charge the defendant Lee with them.*

II. The plaintiffs below are not deprived of an action on the account, because of the taking of the note.

1. Not even if the note had been the note of the firm, as it purported.   There must be an *express agreement* to take it in payment.   [9 Porter, 150 ; Chit. on Con. 766-7, and note and cases cited ; 8 Cowen, 77 ; 1 Hill's N. Y. Rep. 516 ; 5 Ib. 448 ; 3 B. & A. 611 ; 6 Eng. C. L. 397 ; Story on Bills, 509, § 431 ; 4 Dev. Law Reporter, 460 ; 1 Dev. E. R. 466 ; 2 A. K. Marsh. 285-6 ; 10 N. H. Rep. 505.]

2. The note did not turn out what it was given and taken for.   As to the party sought to be charged here, it was practically, though innocently, a forgery.   [12 Mass. Rep. 237 ; Law Reporter for July 1845, 131, § 14 ; 1 Stew. Rep. 220 and 354.]

III. Lee is not discharged by delay : gratuitous indulgence, even between principal and surety will not discharge surety—[6 Ala. R. 532 ; Ib. 572 ; 3 Ib. 335,]—certainly not as between partners, where all are principals.   [2 A. K. Marshall, 285-6.]

IV. The pretended endorsement does not avail Lee.   There is no proof of negotiation.   The blank endorsement is nothing.   [9 Porter, 367.]

It is the same to Lee whether it was negotiated or not. He is not liable on the note—it can never be enforced against him ; if assigned, the note and account are both in the same hands, and embraced in an action concluding the liability on both.

V. If any offer to surrender or cancel were necessary, the authority of the plaintiff's counsel of an act done in open court, in the prosecution of a case, cannot be questioned: If he could remit the judgment, why could he not deliver up the paper? But Lee repudiated the note—he certainly had no right to it. It was cancelled enough, when no recovery could be had on it, and it was void.

VI. Lee cannot object that a recovery was had against Abrahams. It was a good note as to him. He is not injured, but benefitted. There is no election to take Abraham's exclusive liability. Election supposes a knowledge of all the facts, and this must be shewn by the party setting it up. [7 Johns. 477.] Besides, the remedies were not inconsistent, and only in such cases does the doctrine apply.

VII. If the charge on the whole is right, and puts the law of the case fairly before the jury, it is not material about the form of it. The court puts it to the jury to decide whether there was any *express* agreement; and so the record shows.

COLLIER, C. J.—The first charge given to the jury, merely affirms that if A., L. & Co. received the assets of A. & T. under an agreement with T., to pay their debts, "it was a sufficient undertaking, and not within the statute of frauds, as to any thing involved in this case." Such a contract is not obnoxious to that provision of the statute of frauds which declares, to "no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person." The testimony which induced this charge is thus stated in the bill of exceptions: "The terms on which said Terry went out, and said Lee & Yarborough came in, were, that said new firm of Abrahams, Lee & Co. should have all the assets of the firm of Abrahams & Terry, of every kind, and should assume to pay all its debts; and in pursuance of this arrangement, said new firm received the assets of said firm of Abrahams & Terry, to pay its debts, and said Terry went out." Here was clearly a sufficient consideration moving from Terry to Lee, to support the undertaking of the latter, and this is quite enough to relieve the agreement from the influence of the statute of frauds, whether we consider the promise of Lee

as enuring to Terry, or to the creditors of A. & T. Its validity is conceded if T. be regarded as the promissee, and if the plaintiffs may avil themselves of its previous adjudications conclusively show the same result. In McKenzie v. Jackson, 4 Ala. Rep. 230, it was said, "where the promise to pay the debt of another then subsisting, arises out of some new consideration of benefit to the promissor, or harm to the promissee, it is not within the statute." See also, 3 Stewt. & P. Rep. 54; 4 Cow. Rep. 432; 1 Wilson's Rep. 305; 3 Burr. Rep. 1886; 7 Johns. Rep. 463; 8 Id. 39; 10 Johns. Rep. 412.] The only difference in the facts of the case first cited, and that now before us, is this, there the partnership was dissolved, and one of the partners, together with a third person, received the goods, and all the debts and effects of the firm, and undertook with the other to pay all the debts of the firm, and what he owed individually; afterwards, the parties receiving the goods, &c. promised a creditor of the firm to pay his debt: *Held*, that the promise made to the withdrawing partner was not within the statute of frauds, and the receipt of the goods was a sufficient consideration for the promise to the creditor. Let this view of the law suffice to show that the circuit judge rightly ruled in the first charge to the jury.

The second instruction seems to us to assert a legal truism, viz: that it does not come within the scope of the business of one partnership to pay the debts of another, but where the former receives the assets of the latter, under an agreement thus to appropriate them, then the payment of such debts becomes a legal duty.

It is equally clear that the note which was taken by the plaintiffs' agent of Abrahams, must have been received in payment of their account, or the plaintiffs may prosecute an action on the account, as if the note had never been made, unless something subsequently occurring makes a different rule applicable. It has been often held, that a debt is not extinguished by the acceptance of an obligation of equal dignity. [Bowers v. State, 7 H. & Johns. 32; Clopper v. Union Bank, Id. 92; Hart v. Boller, 15 Sergt. & R. Rep. 162.] But a specialty is an extinguishment of the account for which it is substituted. [Mills v. Starr, 2 Bailey's Rep. 359.] Whe-

ther a note is taken absolutely, as a payment, is a question of fact for a jury. [Johnson v. Weed, 9 Johns. Rep. 310; McGuire v. Gadsby, 3 Call's Rep. 234.] In Sheehy v. Mandeville, 6 Cranch's Rep. 253, it was said, to make a promissory note a payment of an account, it must have been received in discharge. And it has been held, that receiving a note is *prima facie* a payment. [Hutchins v. Olcutt, 4 Verm. R. 555; Plankinhorn v. Cave, 2 Yeate's R. 370; Cornwall v. Gould, 4 Pick. R. 444.]

It has been decided, that a substituted note does not constitute a payment of an original one, which was valid, where the new note is avoided on the ground of usury. [Johnson v. Johnson, 11 Mass. R. 359; 1 Pick. Rep. 415; Stebbins v. Smith, 4 Id. 97, 100: Watkins v. Hill, 8 Id. 522; Ramsdell v. Soule, 12 Id. 126.] So it has been repeatedly adjudged, that a bill or note of a debtor, or any other person, is not a payment of a *precedent debt*, unless it be expressly so agreed. [Kennell v. Mungey, Peck's Rep. 273; Murray v. Gouverneur, 2 Johns. Cases, 438; Tobey v. Barbour, 5 Johns. Rep. 68; Johnson v. Weed, 9 Id. 310; Herring v. Sanger, 3 Johns. Cases, 71; Bill v. Porter, 9 Conn. Rep. 23; Higgins v. Packard, 2 Hall's Rep. 547; Chastain v. Johnson, 2 Bail. R. 574; McGinn v. Holmes, 2 Watt's Rep. 121; Gilmore v. Bussey, 3 Fair. R. 418.] A promissory note given to a creditor, if it is not intended by the parties as a payment, shall not operate as such. [Maneely v. McGee, 6 Mass. Rep. 358; Goodenow v. Tyler, 7 Mass. 36; Emerson v. Prov. Hat Man. Co. 12 Mass. R. 237; Vancleef v. Therasson, 3 Pick. R. 12.] But it has been held that when a debtor gives his negotiable note to his creditor, for a debt due by simple contract, the presumption is that it was received in payment; this presumption may be controlled by evidence that such was not the intent of of the parties. [Baker v. Briggs, 8 Pick. Rep. 122; Reed v. Upton, 10 Id. 522; Jones v. Kennedy, 11 Id. 125; Wood v. Bodwell, 12 Id. 268; Hoar v. Clute, 15 Johns. R. 224; Harrison v. Hicks, 1 Porter's Rep. 423.] The mere giving of a promissory note is not the payment of a pre-existing book debt, and upon default of the payment of the note, the creditor may recover upon the original consideration. [Putnam v. Lewis, 8 Johns. Rep. 389; see Hays v. McClung,

4 Watts R. 452; Porter v. Talcott, 1 Cow. R. 359. Ayres v. Vanlien, 2 South. R. 765; Crockett v. Trotter, 1 S. & P. Rep, 446; Cromwell v. Lovett, 1 Hall's Rep. 56; Franklin v. Vanderpoel, Id. 78; Sneed v. Wiester, 2 A. K. Marsh. R. 277.] Giving a note which proves to be an insufficient security, does not discharge the original debt. Nor will a check or note which is merely colorable, or founded upon a void consideration, have that effect. [Dennie v. Hart, 2 Pick. R. 204; People v. Howell, 4 Johns. Rep. 296; Patton v. Ash, 7 Serg. & R. Rep. 116; Beard v. Brandon, 2 N. & McC. Rep. 102.] In Emerson v. Providence Hat Man. Co. 12 Mass. R. 237, it was decided, that if a new security be received in payment of a previous liability, which the creditor cannot collect on account of a want of authority in the agent who gave it, the original liability is not discharged. So a creditor taking a note which he indorses, and has discounted at bank, but is afterwards obliged to pay does not thereby discharge the antecedent liability. [Kean v. Dufresne, 3 Sergt. & R. Rep. 233.]

In The Bank of the Commonwealth v. Ray, 7 J. J. Marsh. R. 272, a new note was given at a bank as a renewal of a former note, including one new obligor, and dropping two of the former, and the bank, after notice that the signature of one of the sureties to the second note was a forgery, brought a suit thereon, obtained judgment against one of the obligors, issued execution, and made part of the money out of one of the parties to the second note: *Held*, that these facts showed a state of things amounting to a payment and discharge of the first note.

It is conceded, that although the third instruction may be correct, as the assertion of a legal proposition, yet it was not adapted to the evidence in the cause, and was calculated to mislead the jury, to the prejudice of defendants. The mere fact that the note was indorsed with the names of the plaintiffs, the payees, does not warrant the inference that that they had made some third person, the proprietor of it. We know that according to the usual course of business notes in the form of that now in question. are indorsed by the holder when they are delivered to the officers of the bank for collection; and it is not an unfair inference to presume that the

plaintiffs indorsed the note in compliance with such usage. But be this as it may, there was no evidence to show that the plaintiff ever negotiated it, so as to divest themselves at any time of the title to it. Suppose however, it had been shown, that by their indorsement the plaintiffs made a third person the holder of the note, would this make the reception of the note more absolutely a payment than it otherwise would be? We think not. The note was doubtless taken under an impression by the plaintiffs, their agent, and Abrahams, that it was a valid security, and their mistake in this respect should not work harm to them. We have seen that it has been decided, if a creditor receives a substituted security, which he indorses and has discounted, but afterwards pays the same, he may sue upon the antecedent liability. So it has been held, as several of the citations we have made show, that if the creditor cannot collect the new security, in consequence of the want of authority in the party giving it, he may resort to the original cause of action; especially if he was ignorant of the invalidity of the substituted demand when he instituted his action upon it. There is no evidence in the record, indicating that the plaintiffs were aware that Abrahams had transcended his legitimate powers, in subscribing the names of A., L. & Co. to the note, when they sued, or recovered a judgnent thereon. The argument then, that the third charge was calculated to mislead the jury, is not well taken. But if such is its character, it is perhaps worthy of consideration, whether, as it is correct in the abstract, it was not incumbent upon the defendant to have asked additional or explanatory instructions.

In instructing the jury, that to make the note a satisfaction of the account, there should have been an *express agrement to that effect*, it is clearly true that the court followed some adjudged cases. Whether these decisions lay down the law in terms too stringent, we will not stop to inquire, since it is clear, (no matter how this may be,) if the defendant's intestate was ever liable on the account, the liability is undischarged by any thing shown at the trial.

The agreement between Terry and Lee upon the withdrawal of the one and the coming in of the other, enured

to T. and not to the creditors of the firm of which he had been a partner, and he alone could sue for its breach.

To entitle a party to maintain an action upon a contract, it must have been made with him, or he should have been legally and really interested in it when made. [Dawes v. Peck, 8 T. Rep. 332; Anderson v. Martindale, 1 East's Rep. 497; Skinner v. Stocks, 4 B. & A. Rep. 437.] It is not enough that he have an equitable interest. [Shaw v. Sherwood, Cro. Eliz. Rep. 729; Allen v. Jeulett, Holt's Cases, 641; Carnezie v. Waugh, 2 D. & R. Rep. 277; Phillips v. Bateman, 16 Easts Rep. 370.] There can be no question that a party may not only sue upon a contract made by an agent, previously appointed, but he may in some cases adopt a contract made for his benefit. [Ker v. Osborne, 9 East's Rep. 378; Owen v. Bowen, 4 Carr. & P. Rep. 93.] It should appear that the plaintiff is the only person with whom the contract was made, or in whom the *legal interest* was vested at the time it was made; for all parties in whom the *joint legal interest* in a contract is vested, must sue for its breach; and this though it was made with several, or was in terms joint and several. [Withers v. Bricham, 3 B. & C. Rep. 254; 6 D. & R. Rep. 106; Eccleston v. Clipsham, 1 Saund. R. 153.] If however, the cause of action and legal interest of the plaintiff in the contract be joint, he need not join any other party, though the words of the contract made another person jointly interested.

It has been held that there may have been a change of credit between the parties which will entitle the plaintiff to recover, though he was not the original contractor with the defendant; thus, "suppose A owes B $100, and B owes C $100, and the three meet, and it is agreed between them, that A shall pay C the $100, B's debt is extinguished, and C may recover that sum against A." [Tatlock v. Harris, 3 T. Rep. 180; Hodgson v. Anderson, 3 B. & C. Rep. 855; 5 D. & R. Rep. 735.] But it is said to be necessary that B's debt should be *extinguished* by the arrangement. [Wharton v. Walker, 4 B. § C. Rep. 163; Wilson v. Coupland, 5 B. & A. Rep. 228; Spratt v. Hobhouse, 4 Bing. R. 173.] And this it is said, can only be done by a communication between all the

98

parties, and an express agreement by the plaintiff to accept the defendant as his debtor. [Wharton v. Walker, *supra.*] These citations furnish principles so direct and explicit to show, that the plaintiffs could not have maintained an action upon the contract between Terry and the defendant's intestate, that it is needless to amplify the point.

This conclusion is by no means decisive of the present case, if the intestate, after his initiation into the firm, became liable to the plaintiffs. The intestate, it will be observed, authorized Abrahams to obtain a loan of money from the plaintiffs, upon the faith of his crop of cotton, growed in 1836, to be shipped to them. A loan could not be thus obtained, but the plaintiffs accepted the drafts of A., L. & Co., and thus the identical object proposed to be effected by the loan was answered. Now it is clear, that this transaction was not consummated according to the authority which L. conferred upon A.; but it was done in a manner to subserve the same purpose, without, so far as the record informs us, imposing a heavier burthen upon L., who, when informed by A. (shortly afterwards,) what he had done, made no objection. The question is, whether his silence shall be construed into an assent to what A. did.

It is stated to be a well established rule, that where a man stands by, knowingly, and suffers another person to do acts in his name, without any opposition, or objection, he is presumed to have given an authority to do those acts. [Story on Agen. 82-3.] It is competent for a principal to ratify the unauthorized acts or omissions of his agent; especially if the rights of third persons are not thereby prejudiced. If, therefore, "the principal, upon a full knowledge of all the circumstances of the case, deliberately ratifies the acts, doings or omissions of his agent, he will be bound thereby, as fully to all intents and purposes, as if he had originally given him direct authority in the premises, to the extent which such acts, doings or omissions reach." [Story on Agen. 234 to 253.] "Slight circumstances and small matters will sometimes suffice to raise the presumption of a ratification. But whenever the acts and conduct of the principal are inconsistent with any other supposition, the presumption becomes of course far more violent and conclusive." [Id. 247.] Long acqui-

escence, without objection, and even the silence of the principal, will in many cases amount to a conclusive presumption of the ratification of an unauthorized act; especially where such acquiescence is not otherwise accounted for; or such silence is either contrary to the duty of the principal, or it has a tendency to mislead the other side. As an example it is said, " where an agent, without authority, had compromised a debt of his principal, who after knowledge of the fact, made no objection, and acquiesced for a length of time in the act he was held bound by it. Where an agency actually exists, the mere acquiescence may well give rise to the presumption of an intentional ratification of the act." [Id. 248-9.] "If the principal having received information by a letter from his agent, of his acts touching the business of his principal, does not in a reasonable time express his dissent to the agent, he is deemed to have approved his acts, and his silence amounts to a ratification of them." [Id. 250-1; 1 Liv. on Agen. 50; Wood v. McCain, 7 Ala. Rep. 800, and citations there made; Vianna v. Barclay, 3 Cow. Rep. 281; Bell v. Cunningham, 3 Peters' 69, 81; 4 Wash. C. C. Rep. 559; Erick v. Johnson, 6 Mass. Rep. 193; Amory v. Hamilton, 17 Id. 103; Richmond Man. Co. v. Starks, 4 Mason's R. 296; Terril v. Flower, 6 Marsh. Rep. 584; Rogers v. Kneeland, 13 Wend. R. 114; Paley on Agen. 171-2; Prince v. Clarke. 1 B. & C. Rep. 186.] This view of the law, as sanctioned by the highest authority, is quite satisfactory to show, that the jury might have inferred that the intestate ratified the act of A. as his agent, in obtaining the acceptance of the plaintiffs upon the drafts of A., L. & Co. This being the case, and the note which was given by A. upon liquidating the plaintiffs' account for advances, &c., not being obligatory upon the intestate, or accepted by the plaintiffs as an *absolute payment*, we can conceive of no objection to the maintenance of the present action.

In respect to the items in the plaintiffs' account, with which the intestate was chargeable, but for which A. individually, or in connection with the other members of his firm, was liable, it may be remarked that they do not amount to as large a sum as was collected upon the judgment against A. In addition to the costs, A. testifies that $1701 was made

by the sale of *his property* to satisfy that judgment. This is too clear to warrant the inference that the estate of A., L. & Co. was thus seized and sold; if such were the case, the defendants in the case at bar, could claim a deduction *pro tanto*, from so much of the account as A., L. & Co. were jointly liable to pay. But as the judgment was against A. individually, who was responsible for the entire account, and his separate property was devoted to its payment, it was competent for the plaintiffs so to apply the credit as to extinguish first the items of the account with which A. or A. & T. were chargeable.

It is difficult to perceive of any reason why the neglect of the plaintiffs to sue A. more promptly, should affect the liability of L. They were both primary debtors, and if L. had desired a more speedy collection, he should have paid the plaintiffs to the extent of his responsibility, and have sought reimbursement from A of his proportion of the debt.

The admission by the plaintiffs, that the plea which denied that the note declared on in the three first counts of the declaration, was made by the intestate, or by his authority, was true would have barred another action thereon against his representative. The judgment upon this plea being matter of record, would itself have been conclusive in their favor. It is equivalent to a cancellation, and if this be necessary, where the party insisting on it is not liable on the note, it may be regarded as a substitute; especially where a judgment has been recovered upon it against the party chargeable, so as to merge it, and make a part of the file in that suit.

We have gone quite beyond the questions arising upon the charges given and refused. But we have done so in deference to the arguments of counsel. The result of what we have said is, the judgment must be affirmed.