TRADERS' NATIONAL BANK *vs.* ALBERT D. ROGERS.

Suffolk.    November 19, 1896. — January 8, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Promissory Note — Forged Indorsement — Finding — Ratification — Estoppel.*

If a person, whose indorsement of a promissory note was forged, received no benefit from the forgery, and the forger was not his agent for any purpose, he is not bound, as a matter of legal duty, to repudiate at once the genuineness of the signature. His failure to do so is evidence, in an action upon the note, in the nature of an admission which may be considered as bearing upon the question whether he assumed the signature as his own; but it is not conclusive.

A., who had been notified by a bank that a promissory note which it had discounted, and which purported to be indorsed by him, had been protested, called at the bank and asked to see the note. The cashier handed the note to A., who looked at it and said nothing, but threw it down on the desk of the cashier, who said, "It is all right, is n't it?" and A. replied, "The note will be paid." On the next day, in response to a demand by the bank for payment, A. called at the bank and asked to see the note again. The note was shown to him, and, after examining it, he said that the signature thereon was not his, but was a forgery. *Held,* in an action on the note, that it was competent for the judge, who tried the case without a jury, to make such findings, on the evidence, as to the intent with which A. made the remark quoted, and as to its effect upon the officers of the bank, as would negative both a ratification and an estoppel.

CONTRACT, upon a promissory note for $2,500, dated February 2, 1893, payable four months after date to the order of the maker at the plaintiff bank, signed by C. P. Walker, and purporting to be indorsed by the defendant and by H. S. Walker. The answer denied the genuineness of the defendant's signature. Trial in the Superior Court, without a jury, before *Lilley,* J., who allowed a bill of exceptions, in substance as follows.

H. J. Jaquith, called as a witness for the plaintiff, testified that he was president of the plaintiff bank during June, 1893; that the note in suit was at that time held by the bank; that the note fell due on June 5, 1893, and was protested; that a letter was written by one Wentworth, cashier of the bank, to the defendant, on June 6, demanding payment of the note; that on the next morning, June 7, the defendant called at the bank in response to the letter; that the cashier was at his desk and the witness was inside of the rail talking with him about bank

matters; that the defendant said, "I came to see that note of Walker's that you notified me of protest, — I would like to look at it"; that Wentworth handed the note to the defendant, who examined it, threw it down on the cashier's desk, and turned to leave without saying a word; that Wentworth then spoke and said, "That is all right, is n't it?" and the defendant replied, "That note will be paid"; that they waited for payment until after the close of banking on that day, and, not having received the payment which they understood would be made, Wentworth wrote a letter to the defendant, notifying him of a payment of $500 on the note, and demanding payment of the balance; that the next morning the defendant came in with a gentleman whom he introduced as H. S. Walker, and said he wanted to look at that note again, and it was again shown to him; that Wentworth and the witness were present at that interview; that after examining the note Walker said, "That is n't my signature," and the defendant repeated substantially the same statement, "The signature is n't mine"; that the witness said to them, "You know what that means, — then it is a forgery," and the defendant said, "Yes, that is what I mean"; that Wentworth inquired of them if they could not arrange to take it up and save the disgrace that would fall on H. S. Walker, who was the brother of the maker of the note, but the reply was made that they had settled up a number of his misdeeds, that he had cost them a great deal of money, that there were a number of other forged notes that were out, that they did not care to do anything about it, and that the matter must rest with the bank; that Wentworth inquired of the defendant why he had changed his lines from the previous day when he led him to believe he would pay it, and whether it was because he had found there was other forged paper out; that, later in the day, C. P. Walker, the maker of the note, called in and was arrested for forgery; that immediately after C. P. Walker had been removed by the officers, the witness had the property in his store attached and a keeper put in; that, after Walker was removed from the bank, the witness had a conversation with the defendant, in which the latter said he recognized the signature as a forgery as soon as he saw it; that it was not at all like his own signature, and that he went out to other banks to see if he could

find out how much more of the forged paper bearing his indorsement was out; that he then saw Walker, who told him that there were a number of pieces of paper with his forged indorsement upon them ; that Walker was indebted to him, and he was Walker's bondsman in a criminal action against him for embezzlement ; and that he had lost all he intended to by him.

The witness further testified : " The bank counsel brought a notice which was shown to me, signed by counsel for Walker, demanding the release of the property held on attachment, as being the property of C. P. Walker's brother.   After examination into the circumstances, I directed the withdrawal of the keeper and the release of the property attached."

On cross-examination, the witness testified that the exact words that the defendant used in their first interview were, " That note will be paid," or " The note will be paid " ; that he said only those words, and left the bank ; that he looked at the paper, turned on his heel as the question was asked, and left without further words; that the second conversation, with the defendant and H. S. Walker, lasted for fifteen minutes ; that when the defendant called the first time he was there only two or three minutes; that his appearance at that interview indicated that the note was news to him ; that the witness supposed from his appearance that he had " got stuck " on an accommodation indorsement; and that he supposed the note would be taken care of.

Andrew Houghton testified, for the plaintiff, that on June 8, 1893, he, as inspector of police, arrested Charles P. Walker for forgery of the note in suit at the plaintiff bank; that after that he went down to Walker's place and met the defendant on the sidewalk ; and that " he asked me what I had done with him, and I said I had locked him up.   I said, ' It is a serious matter,' and he said, ' I don't know about that.   That matter will be attended to.' "

On cross-examination, he testified that the defendant did not, in any way, give him to understand that he had authorized Walker to sign his name on that note; and that " he said it would be taken care of, — that is all."

John B. Fitzpatrick testified, for the plaintiff, that he made an attachment in accordance with a return upon a writ dated

June 9, 1893, in an action of contract between the Traders' National Bank and Charles P. Walker upon the note in suit in this action; and that on such writ he attached a small safe, a desk, an ice-chest, some papers and documents which were in the safe, and $5.53 in money, as the property of Walker, at his place of business.

Ralph S. Wentworth testified, for the plaintiff, that the note in suit was at the plaintiff bank in June, 1893, when he was the cashier of the bank; that the note had been discounted by the bank for full value; that it was due June 5, 1893, and was protested on that day for non-payment; that the defendant called at the bank for the first time regarding the note on the morning of June 7, in response to a letter, and asked to see the note, and the witness handed it to him; that he took it and looked at it, and the witness told him he should have to look to him for payment; that he stated to the witness, "If I would hold the note until later in the day, and give him an opportunity to see C. P. Walker and see if some arrangement could not be made to take it up, and if C. P. Walker did not pay me he would"; that as the defendant did not appear as he stated he would, the witness wrote a letter demanding payment; that he came on the following morning, June 8, and asked to see the note again; that the witness handed it to him, and he stated that the indorsement was a forgery; that that was the first intimation the witness had that it was a forgery; and that he told him that he was very much surprised that he did not so state to him in the first place.

James G. Walker testified, for the plaintiff, that he was the brother of Charles P. Walker; that he had a bill of sale from Charles P. Walker to himself, which was made out in lead pencil, in the Tombs, on the night of June 8; and that it contained the fixtures of the store, a safe and desk, some scales and benches, and an ice-chest.

The defendant testified that he had known Charles P. Walker for fifteen years, and had had business dealings with him; that he first saw the note in suit on the morning of June 6, at the plaintiff bank; that there was no payment on it at that time; that the indorsement on it was not his signature, and that he never authorized any one to write that name; that his first visit

to the bank was because of the protest of the note in suit; that he saw there Wentworth, the cashier, but did not know who he was; that he said, " I have to deny this signature, I have not seen this note before," and that was all that was said there to him; that during the conversation he did not say to Jaquith or to Wentworth, either in words or in substance, " The note, or that note, will be paid"; that he said nothing, " only what I have just told you, that was all the conversation I had "; that, at H. S. Walker's invitation, the witness went with him to the bank the next morning, and Walker asked for the note, and denied his signature; that Jaquith was not present at this interview; and that the witness said nothing about this forgery of his name on that morning, but he denied his signature the day before.

The witness also denied having any conversation with Jaquith wherein he told him that he was on Walker's bail bond, and had done all that he was going to do for Walker, or that he had a conversation with Jaquith wherein he stated that he knew this signature was a forgery when he first looked at it, or with Wentworth.

On cross-examination, he testified as follows: " *Q.* What did you do when you first found out that this note was a forgery, when you first saw the note?    *A.* I denied the signature."

Henry S. Walker testified, for the defendant, that he was a brother of Charles P. Walker; that he went to the plaintiff bank with the defendant on June 7 or 8, and saw Wentworth; that he saw the note in suit, and told Wentworth that it was n't his signature; that the defendant looked at the note over his shoulders, but took no part in the conversation, which lasted about five minutes; that he did not think that the defendant denied his signature during that time; and that no conversation took place in which the defendant denied his signature, and said it was a forgery, as stated by Jaquith.

The plaintiff requested a ruling that, upon all the evidence in the case, the plaintiff, as matter of law, was entitled to recover, and judgment should be given for the plaintiff. The judge refused to give this ruling; found for the defendant; and, upon the plaintiff's request for special findings, made the following special findings of fact:

" The note fell due June 5, 1893. It was duly protested and notice was given.

" The defendant called at the bank, June 7, 1893, and said in substance, ' I have come to see that note of Walker's which has gone to protest.' The cashier handed him the note. He looked at it. He said nothing, but threw the note down on the cashier's desk. The cashier said, ' It is all right, is n't it ? ' The defendant said, ' The note will be paid.' On June 8, the defendant came to the bank with H. S. Walker and asked to look at the note again. Upon examining it, he said that his signature thereon was not his, but was a forgery. June 8, 1893, attachment was made by the bank of C. P. Walker's property, a small safe, a meat bench, and a few fixtures. The property was released from attachment upon demand made by the vendee in a bill of sale, which was by C. P. Walker to J. G. Walker of the same property in part as that attached. The bill of sale was made at the Tombs on the night of June 8.

" The court is not satisfied that the conversation took place on June 7, 1893, as related by Mr. Wentworth. The court is not satisfied that the defendant made the remark, ' The note will be paid,' with intent to mislead the plaintiff bank, and give its officers to understand that the signature in question was his and genuine, or with intent to induce the bank to assume that his said statement was an admission of the genuineness of the signature. Nor is the court satisfied that the plaintiff bank relied and acted upon his statement as an admission of the genuineness of his signature."

The plaintiff alleged exceptions.

*A. A. Strout & W. R. Bigelow*, for the plaintiff.

*C. R. Elder*, for the defendant.

ALLEN, J. 1. The plaintiff contends that, if the defendant, when the note was first shown to him, knew that the indorsement of his name upon it was a forgery, he was bound to inform the plaintiff of this fact, and that his omission to do so amounted of itself to an affirmation of the signature. There was nothing to show that the defendant had received any benefit from the forgery, or that the forger was his agent for any purpose. Under these circumstances, the defendant was not bound, as a matter of legal duty, to repudiate or disclaim at

once the genuineness of the signature. His failure to do so was evidence in the nature of an admission, which might be considered as bearing upon the question whether he assumed the signature as his own; but it was not conclusive. *Greenfield Bank* v. *Crafts*, 2 Allen, 269, 273. *Harrod* v. *McDaniels*, 126 Mass. 413. Nor was the defendant's statement that " the note will be paid " conclusive evidence of a ratification of the signature. It was consistent with the idea that the defendant was surprised at finding his name upon the note, and left the bank saying as little as possible, but meaning only to give the impression that he thought the note would be taken up by some one other than himself. Indeed, his words and manner would seem to have left this impression upon Mr. Jaquith himself. It was competent for the court to find, as it did, upon the evidence, that it was not satisfied that the defendant made the remark with the intent to give the plaintiff's officers to understand that the signature was his, and genuine, or with intent to induce the bank to assume that his statement was an admission of the genuineness of the signature; and this finding negatives ratification. *Creamer* v. *Perry*, 17 Pick. 332. *Wellington* v. *Jackson*, 121 Mass. 157. *Greenfield Bank* v. *Crafts*, 4 Allen, 447, 455. *Smith* v. *Tramel*, 68 Iowa, 488.

2. It was also competent for the court to find, as it did, upon the evidence, that it was not satisfied that the defendant made the remark above mentioned with intent to mislead the plaintiff, or that the plaintiff relied and acted upon his statement as an admission of the genuineness of his signature. According to the rule of law as established in this Commonwealth, this negatives an estoppel. *Lincoln* v. *Gay*, 164 Mass. 537. *Stiff* v. *Ashton*, 155 Mass. 130. *Fall River National Bank* v. *Buffinton*, 97 Mass. 498.

*Exceptions overruled.*