# CHARLESTON.

FRANK L. MYERS *v.* J. C. COOK *et al.*

Submitted October 12, 1920.    Decided October 19, 1920.

1. PRINCIPAL AND AGENT—*When Silence Constitutes Ratification of Unauthorized Execution of Note Stated.*

   Mere silence of one whose name has been signed to a note as surety, by the principal therein, a stranger in the legal sense of the term, without authority, until sued on the note, is evidence of ratification of the unauthorized act, but, if unaided by any other circumstance tending to prove intention to ratify it or an element of estoppel, such evidence is insufficient to sustain a verdict based on the hypothesis of ratification. (p. 268).

2. SAME—*Admonition by Party Whose Name Has Been Signed Without Authority as Surety Held Not a Ratification.*

   An admonition by the party whose name has been so used, to the offending party, not to do so again, being altogether uncertain and inconclusive as to intent respecting the past act, is not an additional or supplementary circumstance or declaration of such character as will make failure to disavow the act, until sued on the note, amount to ratification, although it too is admissible evidence. (p. 268).

3. TRIAL—*Evidence Insufficient to Sustain Verdict Will Justify Instructions Based on it.*

   Evidence wholly insufficient to sustain a verdict will justify the giving of instructions based upon it. (p. 269).

4. SALES—*Unsoundness or Imperfection Does Not Amount to Failure of Consideration.*

   Unsoundness or imperfection in the subject of a sale does not amount to failure of consideration of the contract of purchase. (p. 271).

5. SAME—*Fraud Renders Contract Voidable Only.*

Fraud perpetrated in a sale of property renders the contract voidable only, not absolutely void, and, if the contract is not rescinded on discovery thereof, the purchaser is bound by it. (p. 271)..

6. CONTRACTS—*Rescinding Party Must Return Everything of Value Received.*

To effect a rescission cognizable and enforceable in a court of law, the rescinding party must return everything of value he has received by virtue of the contract. (p. 271).

7. SAME—*Tender of Rescission Must be Kept Good.*

A tender of rescission, to be available as actionable or defensive matter, must be kept good in some form. The tenderer must keep himself in a position to put the other party in *statu quo.* (p. 271).

8. SALES—*Pleas of Failure of Consideration May be Treated as Notices of Recoupment.*

Although a party to a contract may not be entitled to relief on the ground of failure of consideration or rescission, he may be entitled to damages for breach of a warranty in a sale, by way of recoupment, and special pleas of failure of consideration and fraud in the sale may be treated as notices of recoupment. (p. 272).

9. ASSIGNMENTS—*Sale of Interest in Logging Contract. Accompanied by Representation of Right to Sell, Held a Warranty.*

Sale of an interest in a logging contract, accompanied by a representation by the vendor of his clear right to sell and assign it and inducement of the vendee to forego inquiry as to such right, made and done with knowledge that the right of assignment was denied and would be resisted by the party for whom the logging was to be done, amounts to a warranty and is broken by the inability of the vendee to obtain the benefit thereof by reason of such resistance of the assignment. (p. 272).·

10. SAME—*Vendee Under Logging Contract Assigned Held Entitled to Abatement for Breach of Warranty by Way of Recoupment.*

In such case, the vendee is entitled to an abatement from the purchase money to the extent of the damages occasioned by the breach of the warranty, by way of recoupment. (p. 272).

11.  TRIAL—*Binding Instruction Ignoring Elements of Case Held Error.*

Under such circumstances, it is error to give a binding instruction which ignores the evidence of the breach of the warranty. (p. 274).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, Roane County.

Action by Frank L. Myers against J. C. Cook and others. Judgment for plaintiff, and defendants bring error.

*Reversed and remanded.*

*Geo. F. Cunningham,* for plaintiffs in error.

*Pendleton, Mathews & Bell,* and *B. C. Eakle,* for defendant in error.

POFFENBARGER, JUDGE:

Three grounds of defense to this action of assumpsit based on two promissory notes for $400.00 each, purporting to have been executed by a husband and wife, were interposed, one negative and the other two affirmative; and the writ of error to the judgment proceeds largely upon the theory of insufficiency of the evidence to overcome the negative plea and sufficiency thereof to sustain each of the others. Upon these propositions among others, the defendants based their motion to set aside the verdict for $1,067.00, which the court overruled. Judgment was entered on the verdict.

With the plea of non-assumpsit, there was filed an affidavit of the wife denying that she had executed the notes or either of them and that she had signed them or authorized any person to sign them for her. They were executed and delivered to the plaintiff, as evidence of indebtedness for purchase money of horses, a wagon and logging implements and an interest in a logging contract. The purchase was made by the husband, in the absence of the wife and without her knowledge, and her name was signed to them by him along with his own, without authority and without her knowledge. The transaction took place at a great distance from their home. They lived in Roane County and the purchase was made in Raleigh. She knew nothing of it for some time after it occurred and then her informa-

tion was derived from her husband, on the occasion of a visit to his home. He professes not to remember what she said on that occasion, but swears "she was kicking" about his having signed her name to the notes and "grumbling about them to some extent." She swears she told him never to sign her name to any other notes. The notes are dated, Oct. 31, 1913, and were made payable in twelve and eighteen months after date, respectively. This, action was commenced, Nov. 27, 1915. At no time within the period of about two years, intervening between the date of the notes and the date of the commencement of the action, did the wife notify the plaintiff of lack of authority in her husband to affix her name to the notes.

Her long silence after knowledge of the action of her husband and her declaration to him, when apprised thereof, are relied upon as proof of ratification. As evidence thereof, they are unaided by any element of estoppel, such as reception and retention of benefit of the transaction. The husband was benefited. He sold the horses and kept or disposed of the proceeds of the sale, but there is no evidence tending to prove benefit to the wife in any legal sense of the term. As to property rights, the husband and wife are as separate and distinct as any other two persons. Her property is free from his obligations and control; and, of course, she is not in any sense the owner of his. Hence, the benefit he derived from the contract cannot be deemed to have inured to her. Nor can his act be deemed to have been merely one in excess of his authority as agent, for he was not her agent. The contract was his own and he undertook to bind her only as his surety. Nor is there any proof that he had ever acted as her agent. Both swear he had no authority to use her name. He swears he had not been in the habit of signing her name to notes.

Her remark on the occasion of notice of his action was not an express ratification. It does not purport to have been. Her admonition to him not to sign her name to any other notes was neither an approval nor a disapproval, in terms, of what he had done. As to that, she said nothing. From her silence as to the past and admonition as to the future, an inference of approval of the act in question might arise. An inference of condemna-

tion and disapproval thereof can arise just as readily and easily from the inhibition then put upon him. In neither case, has the inference any substantial basis, and each inference neutralizes the other. Hence, mere silence after knowledge is the only circumstance tending to prove ratification by acquiescence.

It is admissible as having such tendency. *Hortons & Hutton* v. *Townes,* 6 Leigh 47; *Philadelphia etc. R. Co.* v. *Cowell,* 28 Pa. St., 329; Mechem, Agency, secs. 453, 467; *Traders' National Bank* v. *Rogers,* 167 Mass., 315. And it no doubt constitutes a sufficient basis for the instructions predicated upon it. For such purpose, very slight evidence suffices. *State* v. *Clifford,* 59 W. Va. 1; *Carrico* v. *Railroad Co.,* 39 W. Va. 86; *Hopkins* v. *Richardson,* 9 Gratt. 485. But whether it is sufficiently probative to sustain a verdict is an entirely different question. *State* v. *Clifford,* cited.      Ordinarily, there is no occasion to say whether mere silence unaided by other circumstances is sufficient, because it is aided by conduct or circumstances of some kind, having highly probative value. Moreover, silence supplemented by acts of an equivocal and inconclusive character does not always bind the principal on the theory of ratification. "There must be confirmatory conduct, or at least conduct inconsistent with disapproval. Facts are not to be stretched, or ambiguous, inconclusive or independent acts made the basis of ratification." Mechem, Agency, sec. 474. For these two propositions, the excellent work on agency just referred to cites many well considered precedents aptly illustrating them. In instances in which silence alone is relied upon, in the absence of circumstances imposing a duty to speak one way or the other, the findings are usually against ratification and are not disturbed by the appellate courts. *Ritchie County Bank* v. *Bee,* 62 W. Va. 457; *Hortons and Hutton* v. *Townes,* cited; *Traders' National Bank* v. *Rogers,* cited. "Mere silence, as a general rule, does not amount to an assent, but, taking it together with other circumstances, there are many cases in which silence or acquiescence will warrant a conclusive presumption that assent has been given." Clark and Skyles, Agency, p. 335, sec. 141. There are a few decisions in which it has been broadly stated that mere unaided silence after notice is enough to prove ratifi-

cation.  *Lynch* v. *Smith,* 25 Colo. 103; *Lee* v. *Fontaine,* 10 Ala.
755; *Toledo etc. R. Co.* v. *Prince,* 50 Ill. 26.  But, in all of
them, additional elements are found.  Moreover, the relation
of principal and agent existed and the unauthorized acts were
acts in excess of authority, not the acts of strangers having no
authority at all.  The distinction between the acts of agents
and strangers, in this connection, is highly important.  2 C. J.
512; Mechem, Agency, sec. 458; *Ladd* v. *Hildebrant,* 27 Wis.
135.  Where there is no relation of agency and the act was
done by a mere stranger or volunteer, and the circumstances
impose no duty to speak, mere silence does not prove ratifica-
tion.  *Merritt* v. *Bissell,* 155 N. Y. 396; *Mott* v. *Scholes,* 147
App. Div. (N. Y.) 82.  Such is this case.

The husband acted for himself in the transaction, not the
wife.  He acted against her in signing her name to a note for
his debt.  The plaintiff was as well aware of that fact as he
was.  The former acted at his peril in taking the note without
knowledge as to whether the husband had authority to bind
his wife.  He was bound to inquire and could not rely upon
the supposed agent's representation.  *Rosendorf* v. *Poling,* 48
W. Va. 621; *Rohrbough* v. *Express Co.,* 50 W. Va. 155.  The
plaintiff omitted this duty, and, presumptively, wronged the
wife by his acceptance of the note with her name on it.  He could
have ascertained by inquiry whether her signature was author-
ized, in time to have saved himself all she could have saved
him by her disavowal.  In other words, he could have done
for himself what he thinks she should have done for him.  To
permit him to make her mere failure to do that prove ratifi-
cation would allow him the benefit of his own wrong.  If he
had made the inquiry and she had induced him to forego right
of rescission by an express ratification or, possibly, by silence,
when required to speak, and thus caused him loss, it would no
doubt be otherwise. And, on the other hand, if she had disavowed
the act, he could have asserted his rights against the husband
at once.  By rescission, he might have reacquired the property
he had sold.

The plaintiff, Myers, had a contract with the Rippetoe Lum-
ber Manufacturing Company, by which he was bound to cut and

log, under prescribed conditions, about 5,000,000 feet of timber, and was engaged in performance thereof, with one Melton whom he had taken into the work as a partner. Cook first bought out Melton, paying $700.00 for some horses and other property and his interest in the contract. After having cooperated with Myers for a month or two, Cook bought him out also. As· soon as the Rippetoe Lumber Manufacturing Company ascertained that Myers had sold out and left, it refused to let ·Cook proceed with the work and claimed the right to take over the teams, tools and implements for completion of the work, under a provision of the contract authorizing it to do so in case of default on the part of Myers. The company took this action upon the theory of Cook's inability to do the work, and abandonment thereof by Myers. Cook claims to have made a demand upon Myers for rescission, soon after this happened, which was refused. He used the teams in getting out a small amount of timber, under a new agreement with the company, and then sold them, but what he realized from the sales is not disclosed. At the time of his purchase, the work was proceeding under the contract and there is no proof of any previous claim of right in the company to take charge of it, nor of any such default as would have justified such action. Nor was there any clause in the contract, inhibiting assignment thereof, and, being a mere working contract, not requiring personal skill, it was assignable. *Poling, Trustee* v. *Condon-Lane B. & L. Co.,* 55 W. Va. 529. There may not have been right to enforcement of specific performance, when the lumber company prevented performance, but there was no doubt a right of action for damages, if Cook was ready, willing and able to perform. By his assumption of the contract, he represented that he was. Hence, it is apparent that the jury could properly find there was no failure of consideration, unless there was a breach of a warranty. He obtained what he contracted for, if there was a valid contract, and no breach of it by Myers.

Fraud in the contract, if any rendered it voidable, not absolutely void. *Wickham* v. *Martin,* 13 Gratt. 427, 436; *Coffman* v. *Viquesney,* 76 W. Va. 84. It constituted good ground for

rescission, but rescission involves more than a mere resistance of enforcement. He who would terminate or avoid a contract by that method must restore everything of value he received by virtue of it. *Worthington* v. *Collins,* 39 W. Va. 406. However it may be in equity, where compensation can be made, rescision to be effective in courts of law must be complete. A partial rescission amounts to nothing. *Manss-Bruning Shoe Co.* v. *Prince,* 51 W. Va. 510. If the parties cannot be placed in *statu quo,* an action can neither be prosecuted nor defended on the ground of rescission. 24 Am. & Eng. Ency. L. 646, citing numerous decisions sustaining the text. In view of this doctrine, fraud in the contract would not necessarily preclude right of recovery, even though Cook offered to rescind. He is not in a position to restore the property he obtained. At any rate, he has not proposed in this action to do so. He has sold it and has not brought the proceeds of sale into court, nor shown that he stands ready to pay them over. In other words, he has not kept his tender good. On the refusal of Myers to accept his offer of rescission, he may have had right to sell the property, but he could not appropriate it to his own use and still defend on the ground of rescission.

The two special pleas setting up substantially the same facts and claiming injury by misrepresentation and loss of a substantial part of the consideration of the notes, the logging contract, may be treated as notices of recoupment, however, and, if the proof establishes a breach of a warranty in the contract, the verdict, allowing nothing by way of abatement for damages, is contrary to the law and the evidence. Treated as such notices, these pleas are clearly sufficient. They charge loss by reason of failure to get the benefit of the timber contract. Before the sale, Myers and Cook were equal owners of the contract and of all of the equipment except the horses and wagon, but the contract stood in the name of the former. Cook swears that, before he closed the negotiations by the purchase, he requested Myers to go with him to W. L. Rippetoe, the manager of the lumber company, and ascertain whether an assignment of the contract would be agreeable to the company, and that Myers assured it was useless to do that and

that he had perfect right to assign it, and thus induced him to forego inquiry as to that highly important matter. The gravity of this conduct is revealed by proof that Myers then knew his right to assign to Cook was denied by the company. Rippetoe swears Myers had requested permission to make such an assignment and had been informed that it would not be permitted, because he was able to perform it and Cook was not. This amounted in effect to notice that such an assignment would be treated as a breach of the contract and justification, under its terms, of seizure of the teams and other property for use in completion of the contract at the contractor's expense. Myers denies none of this in his testimony. He attempts to excuse it or evade it by denial that he sold the logging contract. Cook swears it was part of the consideration, although he admits Myers said the other property was worth the amount of the notes. O. J. White, brother-in-law of Myers and negotiator of the sale, attempted to corroborate Myers, but both he and Myers admit that Cook was to take the contract as well as the other property. It is highly improbable that Cook would have bought a complete logging equipment then in use under a logging contract in which he expected to continue to use it, without reliance upon the contract and this must have been apparent to Myers. He knew the contract was the inducement to the sale of the other property. He knew also that Cook's communication with Rippetoe would prevent the sale, because he would be advised that he would not be permitted to perform it. He does not deny that he assured Cook he would get the contract. While denying he sold it to him, he admits he told him it would go with the sale by way of gift. It was thus held out as an inducement, at least. Besides Myers and White left it on Cook's hands by their departure in the early hours of the morning following the execution of the notes. In the negotiations they may have emphasized the value of the other property, but they knew Cook wanted that property only for use in performing the contract. In our opinion, the facts, circumstances and conduct of the parties prove that Myers sold the contract as well as the other property and represented it to be clear and unembarrassed,

when he knew it was not and that it would be utterly worthless in Cook's hands. He knew, too, that it was a substantial inducement to the sale, as well as a substantial part of the consideration of the notes. Whatever Cook's rights may have been under the Rippetoe contract, Myers knew there would be an adverse claim. Cook was not buying a mere law suit and his vendor, knowing that was all he would get, falsely represented that he would get what he wanted.

Myers swears some money could have been made in the execution of the contract and Cook swears he was damaged to the extent of $2,500.00, by the loss of the contract. The jury allowed no abatement at all from the notes, on account of the loss. Hence, they must have found that the sale did not include the timber contract. If they had found that it did, they should have further found that there had been a breach of a warranty in the sale and allowed something by way of damages. It is clear, therefore, that the verdict, as to J. C. Cook, is contrary to the law and the evidence and must be set aside.

Plaintiff's instructions Nos. 1 and 2 are substantially correct. They are based upon the evidence of ratification hereinbefore referred to, but they inaccurately put in the element of estoppel of which there is no evidence. They probably did not mislead the jury, but, for the purposes of a new trial, they should be limited to ratification. The evidence of ratification justified the modification of defendant's instruction No. 1. Without it, that evidence would have been ignored. Plaintiff's instructions Nos. 3, 4, 5, and 8 are not binding in form, and no error is perceived in them. His instruction No. 7 is binding and ignores the evidence of breach of warranty, wherefore it is misleading and should not have been given.

Parts of the depositions of W. L. Rippetoe and R. L. Goodall were rejected by the court, and assignments of error are predicated on these rulings. The rejected portions are, for the most part, mere conclusions and claims of the witnesses as to the status of the Myers contract, after the assignment thereof. Some of them relate to conversations with Cook after that transaction and in the absence of Myers. The court admitted

all of the material and admissible portions of the depositions, There is no error in these rulings.

For the errors in the giving of plaintiff's instruction No. 7 and in the adverse ruling upon the motion to set aside the verdict, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*