# Elyton Land Company v. Iron City Steam Bottling Works.

*Bill of Interpleader.*

1. *Voluntary conveyance; when not constructively fraudulent as to subsequent creditors.*—As to subsequent creditors, a voluntary transfer or conveyance of property, if it be not shown that there was *mala fides* or fraud in fact in the transaction, is valid and operative.

2. *Equity pleading; correspondence between allegations and proof.*— Where a mortgagee files a bill in equity, seeking to charge a subsequent grantee as a trustee *in invitum* of insurance money received for the loss by fire of buildings on the property, in order for the complainant to get the benefit of a claim, based upon a covenant to insure contained in the mortgage, to an equitable lien upon the insurance money, the bill must set up a claim to such lien, and pray for its enforcement; and the mere fact that the mortgage containing the covenant is made an exhibit to the bill for another specific purpose is not sufficient to support a decree declaring and enforcing such lien.

APPEAL from the Chancery Court of Jefferson.
Heard before the Hon. THOMAS COBBS.

ALEX. T. LONDON and JOHN LONDON, for appellant.—
(1.)  Where the husband pays the purchase money and and takes the title in the name of his wife, she will be declared a trustee *in invitum* for his creditors.—*Hardin v. Darwin*, 66 Ala. 55; *Moore v. Worthy*, 56 Ala. 163. (2.)  A voluntary conveyance to the wife by the husband, when the husband is largely indebted, as against subsequent creditors whose debts are contracted before the debts existing at the time of the gift are paid, is presumptively fraudulent and void.—*Read v. Livingstone*, 3 Johns. Chan. 481; 2 Bigelow on Fraud, 26; *Miller v. Thompson*, 3 Porter, 195; *Huggins v. Perrine*, 30 Ala.

[Elytod Land Company v. Iron City Steam Bottling Works.]

386; *Seals v. Robinson*, 75 Ala. 363; *Elliott v. Horn*, 10 Ala. 348; *Williams v. Avery*, 38 Ala. 115. (3.) If the conveyance by Fogle was effectual to pass the title to Mrs. Mustin, she took as trustee for the creditors of R. W. Mustin, the entire consideration having been paid by him.—*Elliott v. Horn*, 10 Ala. 384; *Pickett v. Pipkin*, 64 Ala. 520; *Bump on Fraud*, 237. (4.) A husband can not create a separate estate for his wife, and donate his whole time, experience, labor and skill to its improvement, and thus shield the products of his labor and skill from his creditors.—*Campbell v. Patterson*, 9 Ala. 933; *Booker v. Waller*, 81 Ala. 549; Bump on Fraud. Con. 245; *Quidort's Adminr. v. Pergeaux*, 18 N. J. Eq. 472; *Wilson v. Loomis*, 55 Ill. 352; *John v. Standort*, 110 Pa. St. 47. (5.) The covenant to insure in the mortgage executed by Copeland and Kemp to the Elyton Land Company was a covenant running with the land, and the Elyton Land Company has an equitable lien on the insurance money arising from the destruction of the building on the land.—1 Jones on Mortgages, § 400; 1 Jones on Liens, § 79; *Carter v. Rockett*, 8 Paige, 437; *Vernon v. Smith*, 5 Barn. & Ald. 1; 1 Biddle on Insurance, § 253; *Vandegraff v. Medlock*, 3 Port. 389.

ARNOLD & EVANS and CHAS. B. POWELL, *contra*—(1.) The complainant must recover, if at all, upon the allegations of the bill. Proof, without allegation, is not sufficient.—*Alexander v. Tailor*, 56 Ala. 63; *Winter v. Merrick*, 69 Ala. 86; *Hooper v. Strahan*, 71 Ala. 75: *American Mortgage Co. v. Sewell*, 92 Ala. 171. (2.) A voluntary conveyance is good against subsequent creditors, unless actual fraud, *mala fides*, is alleged and proved.—*Gilleland v. Fenn*, 90 Ala. 233; *Seals v. Robinson*, 75 Ala. 369; *Kirksey v. Snedicor*, 60 Ala. 197. (3.) An agreement by a mortgagor to insure for the benefit of the mortgagee is not a "covenant running with the land," and does not bind a vendee of the mortgagor.—1 May on Insurance, § 6; 2 *Ib.* §§ 452 (*b*) and 452 (*c*); 1 Jones on Mortgages, § 401; *Dunlap v. Avory*, 89 N. Y. 599; *Reed v. McCrum*, 91 N. Y. 416; *Ridley v. Ennis*, 70 Ala. 468.

COLEMAN, J.—The Merchants Insurance Company, with other insurance companies, issued certain policies

of insurance in the name of and for the benefit of the
Iron City Steam Bottling Co., the appellee. The prop-
erty insured having been destroyed by fire, Mrs. M. E.
Mustin claimed the insurance money, as the owner of
the insured interest. The Elyton Land Company sued
R. W. Mustin, the husband of M. E. Mustin, and sum-
moned the insurance companies to answer as garnishees.
The insurance companies filed a bill of interpleader, in
which the facts were stated, that there were contending
claimants for the money, their readiness to pay to the
rightful owner, when ascertained, and prayed that
claimants be brought in to interplead. M. E. Mustin
answered the bill, and averred the grounds upon which
her rights were based. She claimed to be owner by
virtue of a purchase of a part of the property from her
husband, and the remainder from other parties, whose
names were stated. The Elyton Land Company also
answered the bill, setting up the indebtedness of R. W.
Mustin and the grounds upon which its claim to the in-
surance money rested. The answer of the Elyton Land
Company was made a cross-bill, and R. W. Mustin
and M. E. Mustin parties respondent to the cross-bill.
The cross-bill was answered by the parties made respon-
dents to it. By mutual agreement, the money was paid
into court, and the insurance companies discharged.
The cause was then tried upon the issues made by the
cross-bill of the Elyton Land Company and the answers
of R. W. Mustin and M. E. Mustin.

The case made by the cross-bill is that of a creditor
seeking to reach and condemn assets which have been
fraudulently disposed of by its debtor, and to hold the
grantee a trustee *in invitum* for the benefit of the cred-
itor. True, there are averments in the bill to the effect
that the title and interest of the Iron City Steam Bot-
tling Works never passed from R. W. Mustin, but, tak-
ing the entire bill together, it can not be regarded other
than a creditor's bill for the purposes stated, and if the
cross complainant is entitled to relief he must obtain it
upon the case made by his bill. There must be *allegata*
and *probata*, and these must correspond. The cross-bill
and the evidence show that on the 18th of August, 1888,
the Elyton Land Company sold to Copeland and another
lot 4, block 123, in consideration of which the vendee
executed their promissory note for $4,800. Copeland

[Elyton Land Company v. Iron City Steam Bottling Works.]

subsequently became the sole owner. At the time of their purchase the vendees executed a mortgage on the lot to secure the purchase money, and covenanted to insure the buildings then, or thereafter, erected on the premises, payable to the Elyton Land Company. On the 6th of December, 1890, Copeland, by agreement with R. W. Mustin, sold and conveyed by deed the west half of this lot to M. E. Mustin, and the east half to M. E. Mustin and one Fogle, the consideration being $7,560. Twenty-five hundred dollars was paid in cash, in property, a separate note for seven hundred and sixty dollars, and the assumption by R. W. Mustin to pay the balance that Copeland owed on the lot. The assumption on the part of R. W. Mustin to pay the balance of the purchase money due from Copeland constitutes the entire cause of action and the claim of cross complainant as a creditor of R. W. Mustin. This indebtedness of R. W. Mustin was contracted on the 6th of December, 1890.

We will next consider the transaction between R. W. Mustin and his wife, M. E. Mustin. In April, 1889, R. W. Mustin and one M. N. Fogle purchased the Iron City Steam Bottling Works from Nabers & Morrow, who had been carrying on the business for some years previous under that name. Mustin and Fogle after their purchase continued the business under the same name and style. In June or July of the same year, as claimed by respondents, R. W. Mustin sold his interest in this concern to his wife, M. E. Mustin, who with Fogle, the other partner, continued the business under the same name, and at the same place, several months after the purchase of the lot from Copeland, when the business was removed to that lot. The transfer by R. W. Mustin of his interest in this business was completed about one and a half years prior to the date of the indebtedness of R. W. Mustin to cross-complainant. Cross-complainant contends that R. W. Mustin never parted with any interest in this property, that there was no transfer to his wife. If this were true, there would be no ground for declaring her a trustee *in invitum*. In determining whether there was a gift or a sale of this property by R. W. Mustin to M. E. Mustin, such as would pass his interest and ownership of the property to her, it is not necessary. to prove a sale or gift that would stand the attack of a creditor of R. W, Mustin. The first question is as be-

tween Mustin and his wife. If the transaction was such that she could hold it against him, then, as to him, the gift or sale was complete. We do not hesitate to declare that the evidence in this case is overwhelming to the effect that R. W. Mustin could not recover back this property from his wife. Different principles apply altogether when the *bona fides* of the sale or gift is attacked by a creditor of the grantor or donor. For the purpose of the argument, and not as a fact, we will concede the transfer to his wife was without consideration. It was an accomplished fact long prior to the contraction of the debt of R. W. Mustin to the Elyton Land Company. A voluntary transfer or conveyance is constructively fraudulent as to existing creditors, "but as to subsequent creditors, if it be not shown that there was *mala fides* or fraud in fact in the transaction, the conveyance is valid and operative."—*Seals v. Robinson,* 75 Ala. 363; *Kirksey v. Snedicor,* 60 Ala. 197.

As we are at this time considering the question of fraud upon the hypothesis that M. E. Mustin was a mere voluntary grantee, and for this reason it need not be shown that she participated in the fraudulent intent of her grantor, the question arises, whether the evidence shows that R. W. Mastin was guilty of actual fraud. There is no evidence as to any particular creditor which tends to show R. W. Mustin intended to defraud such creditor, nor do we find in fact that any creditor, who was such in June or July, 1889, the date of the transfer to his wife, was injured, delayed or defrauded in the collection of his debt. On the contrary, we are of opinion the evidence fairly shows that all such debts have been paid, and the majority of these debts, if not all, were paid before the 6th of December, 1890, the date of cross-complainants' claim. Counsel for appellant, realizing the force of these facts, take the position that R. W. Mustin was in fact insolvent when the gift was made to his wife, and that the law conclusively presumes actual fraud from his insolvency at that time. We do not deem it necessary to discuss the question as to whether there can be an honest intent in a transaction calculated to hinder, delay and defraud a creditor, (*Shealey v. Edwards,* 75 Ala. 411; Bigelow on Fraud, 116; *Claflin v. Moss,* 30 N. J. Eq. 211,) because in the present case the facts do not furnish the predicate for the presumption.

[Elyton Land Company v. Iron City Steam Bottling Works.]

In the case last cited from New Jersey Equity, it is held, "that, in order to establish a good title to relief by a subsequent creditor, he must show that at the time of the commencement of his suit there were debts still outstanding which the grantor owed at the time he made the deed, otherwise no foundation is laid for avoiding it as fraud upon antecedent creditors, for if the grantor has paid all his debts incurred prior to the conveyance, that fact fully repels all idea of fraud as to them," citing a number of authorities. It is unnecessary to decide this proposition. The value of property in Birmingham in 1892, according to the evidence, furnishes a very inadequate measure for its value in 1889. A fair consideration of the facts and evidence of the pecuniary condition of R. W. Mustin in June or May, 1889, will not admit of the construction that he was insolvent. His debts are mentioned in detail. Each piece of property owned by him, and its estimated value, is given. Placing his Smithfield and Anniston stock at the lowest estimate, and it was worth thirty-five hundred dollars. Added to his other property, and the amount far exceeds all his indebtedness. This estimate does not include the three hundred acres of land owned in Mississippi. We are entirely satisfied that the conclusion of the learned chancellor upon this phase of the case was correct.

It is next contended that the covenant in the mortgage executed by Copeland, "that the principal buildings now or hereafter erected on the granted premises" shall be insured, * * * * "loss if any payable to the Elyton Land Co. &c." runs with the land, and entitled the cross-complainant to the benefit of the policies. This contention might present an interesting question if it was before us. See the following authorities : *Vandegraff v. Medlock*, 3 Port. 389 ; *Cromwell v. Brooklyn Ins. Co.*, 44 N. Y. 42; (4 Am. Rep. 641) *Daughty v. Van Horn*, 29 N. J. E. 90; *Nordyke v. Gray*, 112 Ind. 535 ; (2 Am. St. Rep. 219) 1 Jones Mort. § 400, 401; *Carter v. Becket*, 8 Paige 437 ; 1 May on Ins. § 6 ; 2 Ib. 452, (b), (c) ; *Reed v. McCrum*, 91 N. Y. 416 ; *Dunlap v. Aurey*, 89 N. Y. 589.

As was stated in the early part of this opinion, to entitled a complainant to relief, there must be *allegata* and *probata*. One without the other is insufficient. The

[Kling v. Tunstall.]

theory upon which this relief can be granted is that the mortgagee has an equitable lien upon the policies, under the covenant to insure. To get the benefit of this equitable lien, it must be set up in the bill, with a prayer to enforce the lien. We have examined the bill minutely, and there is not the least hint of such a claim to be found. The mortgage is referred to and made an exhibit to the bill for a specific purpose, and that is to show the amount of the debt secured, and the right of the complainant to declare all notes due, in default of the payment of one, and the exercise of the right. This is the only part the mortgage performs in the bill. A decree *pro confesso* upon the bill might have entitled the complainant to relief, upon the grounds of a fraudulent gift or sale, and the grantee might have been declared a trustee *in invitum*, but no court would ever have thought of rendering a decree enforcing an equitable lien upon the policies of insurance by virture of the covenant in the mortgage.

We find no error in the decree of the Chancery Court, and its decree must be affirmed.

Affirmed.