DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF WYOMING.

OCTOBER TERM, 1899.

## NEWELL v. MORROW, SHERIFF.

PRINCIPAL AND SURETY — PROMISSORY NOTES'— PAYMENT.

1. A surety upon a promissory note has no cause of action against the principal maker for the recovery of the money due upon the note, before such surety has paid the note and while it remains the property of the payee.

2. The fact that the surety by a verbal agreement with the payee, upon the principal leaving the country, assumed the payment of the note, and the payee said he could have all the time he wanted without interest, did not authorize the surety to sue the principal for the amount of the note as if paid by him; when in fact he did not pay the note until some time afterward, and not until after suit brought, and, until payment, the note remained in the hands of the payee — since the surety was already liable upon the note without the promise to assume its payment, and his promise did not amount to payment.

3. Where a surety brought suit against the principal for the sum due upon the note before he had paid the same, and caused certain property to be attached, which belonged to another, but had been held out as the property of the defendant; *Held*, that he could not hold the property in attachment since he had no cause of action in the suit.

[Decided December 19, 1899.]

ERROR to the District Court, Sheridan County, HON. JOSEPH L. STOTTS, Judge.

Action had been brought by a surety upon promissory note to recover from the principal the amount of the note, alleging payment thereof by such surety. An attachment was sued out and levied upon a stock of goods belonging to one not the defendant, but who, it was claimed, had held defendant out as the owner, and upon the faith of which the surety had signed the notes. The owner brought this suit to enjoin the sheriff from proceeding with the levy. Judgment was rendered for the defendant, and plaintiff prosecuted error. When suit had been brought by the surety, he had not paid the note in fact, but the principal having left the country and the note being due, the surety called upon the payee, and assumed the payment of it, and the payee testified that, at that time, he released the principal and accepted the surety, telling the latter that he could have what time he wanted on the note without interest. The note was not delivered up, and no new writing passed between the parties. The note was paid some time after suit brought and the note then indorsed to the surety. It did not appear that the principal was present when time was given to the surety, but it would seem that he was not present and had no knowledge of the transaction between the payee and the surety. The other facts are fully stated in the opinion.

*E. E. Lonabaugh*, for plaintiff in error.

A surety can not maintain an action at law against his principal until he has first paid the debt for which he is surety. (Minick v. Huff (Neb.), 59 N. W., 795. 24 A. & E. Enc. Law, page 775 and cases cited.) A prerequisite to the right of action at law by a surety is payment of debt of principal. (Estate of Hill, 7 Pac , 664; 67 Cal., 238; Humphreys v. Crane, 5 Cal., 176; Chipman v. Morrill, 20 Cal., 131; Smith v. Johnson, 23 Cal., 65; Stearns v. Irwin, 62 Ind., 558.) *Payment after action brought will not suffice.* (Dennison v. Soper, 33 Iowa, 183; 24 Ency. Law, 778.)

An oral agreement to pay the debt of another is an agreement to answer for the debt, default, or miscarriage of another and is within the statute of frauds. 1249 R. S. And even if in writing it would be void under the statute, unless founded on a valuable consideration. A mere undertaking to pay the past debt of another, no new consideration appearing, is within the statute of frauds. (12 Cal., 286, 542; 18 Cal., 427.)

There can be no novation of a debt without the unqualified discharge of the original debtor. (Western W. B. Co. v. Portery, 70 N. W., 383; Lowe v. Blum, 43 Pac., 1063. Nor can a novation be created without the consent of the debtor. Dean v. Ellis (Mich.), 65 N. W., 971.)

A promise to do an act which the promisor is bound to perform is no consideration. (12 Cal., 553; 9 Cal., 329; Stickler v. Giles (Wash.), 37 Pac., 293; Early v. Burt (Iowa), 28 N. W., 35; Little v. Rees (Minn.), 26 N. W., 7; Jones v. Risley, 32 S. W., 1027.)

*Appelget & Mullen*, for defendant in error.

To pay the debt the surety need not have paid it in money. It was sufficient if the original obligation had been so discharged that the principal was released from its payment. (Rice v. Southgate, 16 Gray, 142; Kingston Bank v. Gay, 19 Barb., 459; Posewalk v. Ballman, 29 Neb., 520; Merrick v. Boury, 4 O. St., 60.) A bill or note should be regarded as payment whenever it appears to have been the intention of the parties. (Riverside, etc., v. Hall, 7 N. W., 350; Hall v. Stevens, 5 L. R. A., 802; Turner v. Bank, 3 Keyes, 435.) If the surety gives his own obligation and thereby discharges the original debt, it is as good as if he had paid money. (Stone v. Hamel, 8 L. R. A., 425; Brandt on Suretyship, 181; id., 178; Stevens v. Hurlbut, 25 Ill. App., 124.)

The payee of the note by verbally extending the time of payment, and releasing the principal maker, suffered a disadvantage, and that was a sufficient consideration for the promise to extend the time, and take the promise of the surety to pay the note. That amounted to a payment by the surety to authorize him to sue upon the note. The

promise was not in the statute of frauds as the surety was already liable upon the note. The defense that there was no cause of action was personal to the defendant in the attachment suit and was not open to the plaintiff in the case at bar.

KNIGHT, JUSTICE.

In this action the defendant in error, as sheriff, had levied an attachment writ sued out in justice court upon the property of plaintiff in error, and an injunction was granted restraining defendant in error from proceeding further.

The court found upon the trial of this case that while the plaintiff in error was and had been the owner of the stock of drugs and fixtures in controversy, since February 3, 1897, that he had allowed one Edward L. Fish to exercise control and represent himself as such owner, publicly, from said February 3, 1897, until September 8, 1897, when said Fish left the State, and plaintiff in error assumed the charge, control, and management of said property.

On September 14, 1897, one Wils Ridgeway commenced the suit and secured the attachment in justice court, above referred to, against said Edward L. Fish, the causes of action being two promissory notes; the first for $75.00, given to S. D. Bell, of date August 8, 1896, due thirty days after date; the second for $45.00, given to the First National Bank of Sheridan, of date May 8, 1897, due two months after date. Each of these two notes were signed by said Edward L. Fish and said Wils Ridgeway as joint makers; but it was shown by the evidence, and not denied, that Ridgeway was a surety only, and received no benefit from the proceeds of either note; and that before he had paid said notes, or either of them, or did anything more than promise to pay them, which he was already legally obligated to do, he commenced his action in attachment against said Fish

in justice court; and defendant in error, Morrow, as sheriff, proceeded to levy upon the property of plaintiff in error, Newell.

It is clearly shown and the trial court so found, that the property of Newell could not be held for the payment of the $75.00 note, under the claim made, because it was executed, due and payable long before said Fish had any connection with, or control of, the property in controversy. The court found that the second note, or the one for $45.00, of date May 8th, 1897, was given during the time said Edward L. Fish was in the possession of the property belonging to plaintiff in error, Newell, and while the latter allowed said Fish to hold himself out publicly as the real owner of such property; and that said Wils Ridgeway, relying on the apparent ownership of said goods and property by said Fish, became liable as surety for the payment of such note, and that the property of plaintiff in error levied upon under the writ of attachment, as aforesaid, was liable for the payment of said note, and that the injunction herein was wrongfully entered and issued to that extent, and judgment was rendered against plaintiff in error for costs; and upon said judgment plaintiff comes to this court on error.

It is not in our judgment necessary to pass upon all the errors claimed, nor have we examined those that seem to have been abandoned in the presentation of the case here. The question presented, and the one that seems to be admitted by defendent in error as decisive of the issues herein, is: Had Wils Ridgeway, as surety, a cause of action at law against Edward L. Fish, on September 14, 1897, on account of the note for $45.00 heretofore described?

It must be conceded that if Ridgeway had no such claim as he could enforce by attachment against Fish, he could not enforce such a claim as against the property of plaintiff in error. The $45.00 note remained

the property of the payee, The First National Bank of Sheridan, until January 1, 1898, and the trial court so found. On that date it became the property of Wils Ridgeway by virtue of the following indorsement made thereon: "Pay to Wils Ridgeway or order without recourse. The First National Bank of Sheridan. A. C. Burrows, C."

The above indorsement would indicate, and witness Burrows so testifies, that said note was assigned to Ridgeway; and when, if ever, Edward L. Fish was released from any liability thereby incurred, does not anywhere appear for the reason that the note itself provides for such an assignment as was made, and continued the liability of Fish; and we fail to find any authority for the finding of the trial court: "That the release of Fish from all obligation on the note was upon a good and valuable consideration, and discharged him from all liability thereon, and was as to him for all purposes payment thereof."

Upon the performance by the surety of his contract of suretyship, he is entitled to the original evidences of debt held by the creditor, and to any judgment into which the debt has been merged, as well as to all collateral securities held by the creditor. By performing the contract of suretyship the principal obligation is discharged, as respects the creditor, but is kept alive between the creditor, the debtor, and the surety, for the purpose of enforcing the rights of the surety. Miller v. Stout, 5 Del. Ch., 259.

No question is made as to the effect of this transfer at the time it was made, the only question being as to the relation of the parties, Ridgeway and Fish, at the time of the commencement of the attachment proceedings in justice court, and their legal liability one to the other.

Defendant in error in his brief makes the following admission: "It must be conceded that the authorities in general terms say, that a surety before he

can maintain an action against his principal must be damnified." It is not necessary to discuss the truth of this admission, nor that it is seldom stated as wildly as by counsel. Defendant in error also claims that the record clearly shows that Ridgeway had a cause of action in chancery, and might have gone further and claimed a statutory right, perhaps under other circumstances, and with the payee as a party thereto; but as was said in Kent's Admr. v. Kent's Admr., 82 Va., 205: "If a party is entitled to recover at all, he must recover on the case stated in his bill. And although the plaintiff may make out a case which, under other circumstances, would entitle him to the aid of the court, yet, if it is not the case made by the bill, he can not recover," citing several authorities in support of the statement.

And so we pass the claims made that payment may be made in certain ways, and that a surety may extinguish or pay the debt of his principal, and that a surety may ask a court of chancery to aid in subjecting the estate of the principal to the payment of the debt without advancing or paying the money, and come to this statement: "The jurisdiction of the justice issuing the order of attachment over the cause of action and the property is unquestioned."

We appreciate the circumstances under which the original action in attachment was brought-as disclosed by the record. The defendant Fish had left the State without the knowledge of the plaintiff Ridgeway, and the latter, believing that the property of plaintiff in error here could be legally held for his, Ridgeway's, claim, against Fish, sought to give jurisdiction to the justice by proceedings in attachment, and levying the same upon the property of another, the plaintiff in error, and without actual or constructive service of summons. This is a fair deduction from the record, which shows Fish left the State, September 8, and that the attachment proceedings were commenced six days later, and that some time intervened before Ridgeway learned that Fish had departed.

A case in point, and one that in our judgment is con-
clusive as to all the issues properly before us, is that of
Dennison v. Soper, et al., 33 Iowa, 183, from which we
quote: —

"From the record it appears that the plaintiff was a joint
maker with defendant of the note upon which the action
is based. As between plaintiffs and defendants, he was
surety only. He does not claim to own or have any prop-
erty in the note, but bases his right of action against his
co-makers solely upon the facts that he was only a surety
for them; that he was not indemnified against loss in case
he paid the note; that the defendants have disposed of part
of their property, with intent to defraud their creditors, and
are about to dispose of the balance with like intent; and
that after the action was brought and before judgment, he
paid the note. We are unable to discover upon what prin-
ciple the action is maintainable. The statute requires that
every action must be prosecuted in the name of the real
party in interest, except in certain specified cases. (Revi-
sion of 1860, Sec. 2757). The 'real party in interest' is
the party having the beneficial interest; the party having
the beneficial ownership; in this case, the holder of the note
for value. See Conyngham v. Smith, 16 Ia., 471; Cottle v.
Cole & Cole, 20 id., 485; Rice v. Savery, 22 id., 470. The
plaintiff had not, nor did he claim to have, any interest in
the note. *  *  *

"A surety has no right of action against his principal,
in respect to the debt for which he is surety, until he has
paid such debt for his principal. Walker v. Lathrop, 6
Ia., 516. Then, and not until then, does the surety have
a cause of action against the principal." *  *  *

"The plaintiff held no claim against defendants on the
note which time would mature or render absolute. The
claim itself only came into being when the plaintiff paid
the note, which was after suit brought. Whether there
ever would become an indebtedness at all depended upon
this contingency. There was no previous indebtedness
which time alone would render absolute. The subsequent

act of ·payment by plaintiff was necessary, not only to render the claim absolute, but to create an indebtedness.''

''We are therefore of opinion that the action, at the time it was brought was not maintainable in the name of the plaintiff, though it might have been in the names of the holders of the note; and the payment of the note by plaintiff, ten months after the suit was commenced, did not entitle him to judgment.''

In the present condition of affairs, then, it is clear that at the time of the commencement of this action there was no legal obligation from Edward L. Fish to Wils Ridgeway, and the procurement and levy of a writ of attachment upon the claim as made, was not authorized by law; and we find that it was error for the trial court to have found otherwise.    The right to an injunction to restrain the levy of an attachment, in a case of this kind, and upon the facts appearing in this case, is not presented to us, and no question respecting the appropriateness of such a remedy is raised by counsel.   Whether or not it was considered by the court below does not appear.   We do not therefore decide that question.   For the reasons stated in this opinion the judgment will be reversed and the cause remanded for a new trial.                             *Reversed.*

POTTER, C. J., and CORN, J., concur