# Smith, *et al. v.* Pitts.

*Bill by Surety to Set Aside Fraudulent Conveyance by Principal Debtor.*

(Decided April 21, 1910.    52 South. 402.)

1. *Fraudulent Conveyance; Bill by Surety; Jurisdiction.*—Equity has jurisdiction to entertain a bill by a surety to set aside an alleged fraudulent conveyance by his principal and subject the land conveyed to the reimbursement of the surety for the sum paid by him in discharge of the principal's debt to the creditor..

2. *Same; Right to Sue; Payment of Debt.*—Before a surety can have an alleged fraudulent conveyance of his principal set aside and subject the realty conveyed to the surety's reimbursement, he must have actually paid the principal's debt before the commencement of the suit; this may be done, however, without the payment of money and may be effected by delivery to and acceptance by the creditor of anything of value taken in satisfaction of the debt.

3. *Same; Surety as Creditor.*—A surety is a creditor of the principal debtor from the inception of the contingent liability, and will be protected in an action for reimbursement against a fraudulent conveyance by his principal pending his liability.

4. *Same; Subsequent Creditors; Actual Fraud.*—As to subsequent creditors a conveyance not infected with actual fraud is valid, and the burden is on one attacking such conveyance to show actual fraud.

5. *Same; Vacation by Surety; Subsequent Creditors.*—Where a conveyance was executed before the original engagement by which the surety became bound, the surety's relation is that of a subsequent creditor, and when he assails the conveyance as fraudulent, he is bound to show actual fraud.

6. *Same; Evidence.*—The evidence in this case stated and examined and held not to show the payment of the principal debt by the surety before filing bill assailing the conveyance.

7. *Same; Plea; Homestead.*—Where the action was by a surety to set aside a fraudulent conveyance by the principal debtor of certain land, a plea by the debtor's wife that the lands conveyed to her was her husband's homestead, and therefore, exempt from liability for satisfaction of the debt in question, and could not be subjected by the complainant to his reimbursement, was not objectionable as a failure to answer the whole bill, since it was sufficient if it answered the aspect of the bill to which it was directed.

8. *Same; Actual Fraud; Anticipatory Conveyance.*—A conveyance is voidable where infected with actual fraud with an anticipatory intent to defraud subsequent creditors.

9. *Payment; What Constitutes.*—In order to constitute payment, there must be a delivery by the debtor or his representative to the creditor or his representative of money, or something accepted by the creditor as its equivalent, with the intention on the debtor's part to pay the debt in whole or in part, and accepted as such by such creditor.

10. *Same; Acceptance of Other Obligations.*—While a debt is not extinguished by the acceptance of an obligation of equal value and dignity, yet in the absence of an express agreement to that effect, the creditor's acceptance of one security in satisfaction of another discharges the original obligation.

11. *Bills and Notes; Co-Makers; Presumption.*—Where two names are signed to a note there is an evidential rebuttable presumption that they are co-makers and equally bound.

12. *Limitation of Actions; Adverse Possession; Payment by Surety; Reimbursement.*—A surety's cause of action for reimbursement does not accrue until he has paid the debt of his principal, and neither limitations nor adverse possession will begin to run against the surety's right until after such payment.

13 *Principal and Surety; Rights as Against Debtor.*—A surety's right of action against his principal for reimbursement is limited to the value with which the surety has parted in satisfaction of the debt with interest and cost and not necessarily to the sum demandable under the contract wherein he is surety.

APPEAL from Tallapoosa Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by C. A. M. Pitts against G. A. Smith and others to declare certain deeds from J. M. Smith and wife to M. M. Smith and Rosa Smith, fraudulent and void as against complainant unless G. A. and J. M. Smith pay to complainant certain sums of money paid by him as surety for them. From a decree for complainants respondents appeal. Reversed and dismissed without prejudice.

JAMES W. STROTHER, for appellant. To set aside a conveyance as to subsequent creditors, actual fraud must be shown. A subsequent creditor cannot complain of the disposition of the debtor's property unless such disposition was made with the intent to hinder, delay or defraud subsequent creditors and actually had that operation; and where a subsequent creditor attacks a conveyance of a debtor's property the burden is upon

him to allege and prove such fraud.—*Ellyton Co. v. Iron Co.*, 109 Ala. 602; *Wilson v. Stevens*, 129 Ala. 630; *Dixon v. McLarney*, 97 Ala. 383, 388; *Yeend, Admr. v. Weeks, et als.*, 104 Ala. 330; *City Furniture Co. v. Simmonds, Durham & Co.*, 111 Ala. 438; *Craft v. Wilcox, et al.*, 102 Ala. 378; *Rike v. Ryan*, 147 Ala. 497. Where a purchaser agreed to pay other creditors of the vendor there is no fraud.—*Eufaula Grocery Co. v. Petty*, 116 Ala. 260; *Carter Bros. & Co. v. Coleman, et als.*, 84 Ala. 256; *Ragan & Co. v. Vandiver & Co.*, 78 Ala. 652. As to a surety a conveyance can only be fraudulent when contract was in existence at the time the conveyance was made.—*Keel v. Larkin*, 72 Ala. 493; *Washington v. Norwood*, 128 Ala. 383; *Werborn's Admr. v. Kahn*, 93 Ala. 201. Where a surety seeks to set aside a conveyance as fraudulent a right of action does not accrue until the surety has paid more than his share of the common liabilities.—*Bragg v. Patterson*, 85 Ala. 233; *Washington Admr. v. Norwood*, 128 Ala. 383. As against the respondent M. M. Smith, if complainant ever had any right or cause of action, it is barred by the statute of limitations of ten years, for a bill seeking to set aside a conveyance as fraudulent as against creditors is a suit for the recovery of lands within the meaning of the statute, and is barred by the statute of limitations of ten years.—*Washington v. Norwood*, 128 Ala. 383; *Scruggs v. Decatur Mineral & Land Co.*, 86 Ala. 173. As to the lands conveyed to Rosa H. Smith, there can be no fraud on creditors whatever may have been the consideration, or even if there was no consideration, or whatever may have been the intention of the parties. This land being the homestead of J. M. Smith at the time of the execution of the deed was not subject to his debts, and as to this land he had no creditors.—*Bank of Talladega v. Browne*, 128 Ala. 560;

[Smith, et al. v. Pitts.]

*Kennedy v. Bank,* 107 Ala. 170; *McLendon v. Grice,* 119 Ala. 513; *Clewis v. Malone,* 119 Ala. 312; *Hodges v. Winston.* 95 Ala. 514.

LACKEY & BRIDGES, for appellee. The bill contained a sufficient statement of facts constituting the fraud.— *Taylor v. Dwyer,* 131 Ala. 91; *Dickson v. Mc-Larney,* 97 Ala. 383; *Seals v. Robinson,* 75 Ala. 363; *Sims v. Gaines,* 64 Ala. 392. A surety may pay the debt before it becomes due, and after maturity may recover from the principal the amount which he has been compelled to pay.—24 Am. & Eng. Enc. of Law (1 Ed.) 774-777. Notice to a subsequent creditor, at the time of the creation of his debt, of a prior conveyance made in fraud of creditors will not affect his right to have the conveyance set aside.—*Echols et al. v. Peurrung Bros. & Co.,* 107 Ala. 660; *Gilliland v. Fenn,* 90 Ala. 230. A surety is a creditor within the meaning of the statute of frauds, and is entitled to protection against fraudulent and voluntary conveyances, from the time when his liability was assumed, although he has no technical right of action until he has paid or satisfied the debt, and the mere renewal of the debt, or the novation of an old debt by a new one does not affect the rights of the parties.—*Keel v. Larkin,* 72 Ala. 493; *Bragg v. Patterson,* 85 Ala. 233; *Washington, Admr., v. Norwood,* 128 Ala. 383; *Yeend Admr. v. Weeks, et al.,* 104 331-341. A surety who has paid or satisfied the debt of the principal is entitled to be subrogated to all the rights of the original creditor, against the principal, and may pursue any remedy that the original creditor could have pursued.—*Knighton, et als., v. Curry, et als.,* 62 Ala. 404; *Wright v. Forgy,* 126 Ala. 389; *Truss v. Miller,* 116 Ala. 494; *Pritchett v. Jones,* 87 Ala. 317; *Schuessler v. Dudley,* 80 Ala. 547; *Watts v. Eufaula National*

*Bank,* 76 Ala. 474; 3 Pom. Eq. Jur. (2 Ed.) 1419, note 1; 24 Am. & Eng. Enc. of Law, (1 Ed.) 202. When two names are signed to a note the presumption is that they signed as co-makers and are equally bound.—*Jackson v. Wood,* 108 Ala. 209. Accommodation endorsers are as between themselves liable in the order of their endorsements in the absence of an agreement to the contrary.—*Abercrombie v. Conner,* 10 Ala. 293. When a deed which is in fact voluntary, recites a large consideration, and is withheld from the record for a long time, and in the meanwhile the grantor procures credit which he could not have procured if the deed had been placed on record, these are badges of fraud, indicating that it was made with the intent to hinder, delay or defraud creditors.—*Dickson, et al., v. McLarney, et al.,* 97 Ala. 383; *Sims v. Gaines,* 64 Ala. 392; *Seals v. Robinson,* 75 Ala. 363. A conveyance of property is void as against creditors whenever a benefit is reserved to the grantor.—*Birmingham Dry Goods Co. v. Roden & Co.,* 110 Ala. 511; *Stephens v. Reganstein & Co.,* 89 Ala. 561; *Proskaner v. Peoples Savings Bank,* 77 Ala. 257.

McCLELLAN, J.—Bill by surety to set aside alleged fraudulent conveyances by an alleged principal debtor and to subject the realty purported to be conveyed therein to the reimbursement of the surety for the sum paid by him in the discharge of the alleged principal's debt to the creditor.

The theory of the bill would invoke a well-recognized phase of equity jurisdiction.—4 Pom. Eq. § 1417, et seq. *Bragg v. Patterson,* 85 Ala. 233, 4 South. 716. To sustain a bill for relief on that theory, it is essential that the original obligation was paid by the surety.—1 Brandt on Suretyship (3d Ed.) §§ 232, 331, 332; *Pinkston v. Taliaferro,* 9 Ala. 547; *Owen v. McGehee,* 61 Ala. 440, 447;

*Knighton v. Curry*, 62 Ala. 404, 413; *Washington v. Norwood*, 128 Ala. 382, 30 South. 405; *Lane v. Westmoreland*, 79 Ala. 372; 27 Am. & Eng. Ency. Law, pp. 470-472.

Since the surety's cause of action, against his principal, comes into existence only upon the payment by the surety of the original obligation, he cannot prevail if his suit be commenced before requisite payment.—*Dennison v. Soper*, 33 Iowa, 183; *Newell v. Morrow*, 9 Wyo. 1, 59 Pac. 429; *Washington v. Norwood, supra;* 27 Am. & Eng. Ency. Law, p. 272. That payment need not necessarily be made in money. It may be effected by the delivery to and acceptance by the creditor of any value, if the same is taken in satisfaction and discharge of the debt. The note of the surety, payable to the creditor, though never actually paid, will, if accepted as payment, avail to clothe the surety with his right of action against his principal for reimbursement and, if otherwise available, to invest him with all the rights, against his principal, that may flow from subrogation.—*Owen v. McGehee, supra;* 1 Brandt on Suretyship, § 232, and note 23 thereto, collating numerous decisions in support of the propositions stated; *Pinkston v. Taliaferror, supra; Knighton v. Curry, supra; Lane v. Westmoreland, supra.* And the surety's right is limited to the value, with interest and costs, he parts with in satisfaction of the debt, and not always to the sum demandable under the contract wherein he was surety.—*Owen v. McGehee, supra;* 1 Brandt, §§ 232, 233.

Since the surety's cause of action, in such cases, does not accrue until he has paid the debt of his principal, neither the statute of limitations nor adverse possession will begin to run until such payment.—*Washing-*

[Smith, et al. v. Pitts.]

*ton v. Norwood, supra; Bragg v. Patterson, supra;* 27 Am. & Eng. Ency. Law, pp. 481, 482.

The surety is a creditor, from the inception of his, even contingent, liability, and will be protected, in an action for reimbursement, from fraudulent conveyances by his principal pending that liability.—*Bragg v. Patterson, supra; Keel v. Larkin,* 72 Ala. 493, 500.

As to subsequent creditors, a conveyance, not infected with actual fraud, is valid and operative, and the burden to show the fraud rests on the assailant of the conveyance.—*Elyton Land Co. v. Iron City Bottling Works,* 109 Ala. 602, 20 South. 51; *Rike v. Ryan,* 147 Ala. 497, 41 South. 959; among others.

Where two names are signed to a note, the prima facie presumption is that the signers are co-makers and are equally bound.—*Jackson v. Wood,* 108 Ala. 209, 19 South. 312. The presumption is, of course, evidential only, and is rebuttable.—*Jackson v. Wood, supra.*

If the conveyance assailed by a surety as fraudulent was executed before the original engagement by which the surety became bound, the surety's relation is necessarily that of a subsequent creditor, who, to avoid the assailed conveyance, must allege and prove actual fraud, as before stated.—*Keel v. Larkin,* 72 Ala. 493.

We think the evidence establishes that complainant became, in January, 1897, the surety, indorser, of two notes, given by G. A. and J. M. Smith as principals, to the Tallapoosa County Bank for a loan thereby, which loans were repeatedly renewed, the complainant reindorsing each time, until the indebtedness was evidenced by three notes maturing in the fall of the year 1903; and that these last notes were paid by the complainant after maturity and after just reason existed to anticipate that compulsory steps would be taken to enforce payment by complainant, the two Smiths being insolv-

ent at that time, if the conveyances to M. M. and Rosa Smith were valid and operative. It is not necessary, we think, to discuss the evidence leading to these conclusions. It is circumstantial as well as positive, and points with requisite certainty, to the conclusions stated.

As said before, on the theory of this bill, it is essential, to clothe complainant with a right of action, that payment of the debt to the bank should have been made before this bill was filed; and, if paid after the bill was filed, the complainant's attitude is that of one who sues without a right of action to enforce. This presents the first issue of fact that must be decided.

From Cyc. vol. 30, p. 1181, we appropriate this as correctly stating the several elements necessary to constitute payment: "There must be (1) a delivery, (2) by the debtor or his representative, (3) to the creditor or his representative, (4) of money or something accepted by the creditor as the equivalent thereof, (5) with the intention on the part of the debtor to pay the debt in whole or in part, and (6) accepted as payment by the creditor."

For practical purposes here, we treat complainant as occupying, in order to effect the payment asserted, the position of a debtor. Another well-sustained rule, serviceable in this instance, is that, "where one security is accepted by the creditor in satisfaction of another, the debt evidenced by the latter is discharged."—30 Cyc. p. 1191. Still another is "that a debt is not extinguished by the acceptance of an obligation of equal dignity," as said in *Lee v. Fontaine,* 10 Ala. 755, 765. Of course, if the obligation of equal or lower dignity is expressly accepted in satisfaction, a discharge necessarily results. *Lee v. Fontaine, supra.* See 30 Cyc. pp. 1192, 1193.

Bearing in mind the essential elements of payment, it is too evident for doubt that on complainant's own testimony, omitting that given by Corprew, payment of the note was not made until the issuance of the check which, Corprew said, was taken as money. Complainant's evidence, in this connection, was: First, that he paid the notes "after the suit was brought"; second, that he "assumed" the debt to the bank before the suit was begun. These statments are not necessarily in conflict. But assumption of the indebtedness, under the circumstances, was not, as is obvious, payment thereof. There was nothing to assume beyond or different from that his written obligation as surety for two insolvent co-makers then imposed upon him. His original obligation was to pay the debt evidenced by the notes he had indorsed, and the justness and economy (to him) of the demand of the cashier was recognized by the complainant when he chose to avoid suit and added costs. The asserted assumption of the indebtedness, as stated by complainant, was but an echo. It was at most no more than a promise to pay that which he had already promised to pay. It is payment, satisfaction, in whole or in part, that is the condition precedent to the existence of a cause of action in favor of a surety against his principal debtor, and a promise is not payment.—*Newell v. Morrow,* 9 Wyo. 1, 59 Pac. 429; 27 Am. & Eng. Ency. Law, p. 472.

Complainant being asked when, before or after suit was begun, the bank first turned the notes over to him, responded, "Before suit was begun I took them down to the office of Lackey & Bridges." It will be noted that the witness did not answer the question categorically. He was an officer of the bank payee at the time. Whether or not he so took them as a representative of the bank does not appear. Whether the notes were delivered to

him as paid, the debt discharged, does not appear from any evidence of the witness (complainant.) As thus viewed, complainant's testimony does not show payment before suit; but, on the contrary, tends strongly to refute, rather than support, the insistence of payment before suit—to refer the payment to the date of the check. The ordinary presumption attending possession of his obligation (30 Cyc. p. 1268) is not important here, since the facts and circumstances surrounding the possession, in this instance, are shown in the evidence.

Does the testimony of Corprew alter the matter, alone or when taken in connection with that of complainant himself? The substance of Corprew's testimony, both on original examination and on the reference before the register, is that, before suit, he having made a futile attempt to collect the money from the Smiths, he told complainant that it was up to him to pay the notes; that to sue would but add cost; that complainant came, the next day, to the bank, asked for the notes, the witness, cashier, gave them to him, and complainant told witness to charge them to him (complainant); that, thereupon, witness made a debit slip (i. e., charged the amount of the notes, we assume, to complainant); that the following May (1908), months after the suit was begun, he called complainant's attention to a "memorandum (L) he had charged to him of the notes, and he told me to issue his check for it"; that the check was paid.

It will be observed that the gist of the inquiry, on this witness' testimony, is whether the charging, as he described it, to complainant, was, in effect, payment, a discharge, of the indebtedness evidenced by the notes.

In order to effect payment, two of the elements are: intention to pay the debt; and acceptance by the cred-

itor, as payment. Intention is a controlling element, on both sides, in cases of this character.

There is no evidence in the record that complainant had on deposit, at the time Corprew delivered the notes to him, any sum of money to his credit. Nor does the evidence show that complainant's direction, at that time, to the cashier was to pay the notes out of his deposit or to charge the sum of the notes against his existing (if so) deposit, as was, in effect, the case in *First National Bank v. Hall,* 119 Ala. 64, 24 South. 526. Nor does it appear from the evidence that there was any effort at cancellation of the notes when the cashier turned them over to complainant. The whole act of the cashier, on that occasion, may be summed up in the statement that he gave the notes to complainant and made a memorandum of charge of the "amounts and numbers of the notes" against complainant at complainant's request.

This court, in *Lee v. Fontaine, supra,* laid down several propositions serviceable here in attaining a sound conclusion. Additional to that before adopted, viz., that a debt is not extinguished by the mere acceptance of an obligation of equal dignity, it was therein ruled "that a bill or note of a debtor, or any other person, is not payment of a precedent debt, unless it be expressly so agreed." Again: "The mere giving of a promissory note is not the payment of a pre-existing back debt, and upon default of the payment of the note, the creditor may recover upon the original consideration." Again: "A promissory note given to a creditor, if it is not intended by the parties as a payment, shall not operate as such." The following decisions here accord with the quoted doctrine of *Lee v. Fontaine; Mooring v. Mobile Company,* 27 Ala. 254; *Marshall v. Marshall,* 42 Ala. 149; *McDonnell v. Alabama G. L. Ins. Co.,* 85 Ala.

401, 5 South. 120; *Lee v. Green*, 83 Ala. 491, 3 South. 785; *Hetherington v. Hixon*, 46 Ala. 297. As presently applicable, the conclusion must be that in order to avail complainant as payment, discharge, of the debts evidenced by the Smith notes, indorsed by complainant, the acts of complainant, on the one hand, and of the cashier, on the other, must have amounted to an express, at the time, agreement, at least by the cashier for the bank, to accept the sole responsibility of complainant in lieu and stead of the indebtedness evidenced by the notes, and hence the extinguishment of that indebtedness.

We do not think, and so hold, that, from the acts and circumstances shown by the evidence, any such unequivocal result was contemplated. Corprew, the cashier, furnishes the evidence of the attitude of the bank toward the "debit slip" charge he made against complainant. He said it was a "memorandum I had charged to him of the notes"; and, as if to clinch the fact against the act's being accepted by the bank as payment of the Smith notes, he also, in the same connection, said, "And he (complainant) told me to issue his check for it." From such a memorandum of charge it cannot be inferred, with any degree of requisite certainty, that the intention of the bank, acting through its cashier, who was dealing with an important officer of the institution, was to evince an express acceptance of complainant's sole responsibility in lieu and stead of the obligation tokened by the Smith notes, indorsed by complainant, and to discharge that indebtedness. A persuasive reason is found in the fact that it does not affirmatively appear from the evidence descriptive of the memorandum that the amount of the indebtedness was ascertained and set down on the "debit slip," the "memorandum." Corprew said: "* * * I made a debit slip of the amounts and the numbers of the notes. * * *" Evidently, the "memoran-

[Smith, et al. v. Pitts.]

dum" taken or made—the "debit slip" charge—was only a description of the notes then given by the cashier to the complainant on complainant's request. This conclusion is confirmed when reference is had to complainant's affirmative statement that he had paid the notes by check (of date May 14, 1908) and "after the suit was begun." The cashier nowhere undertook to expressly say when the indebtedness represented by the notes was paid. It is nowhere shown that any entry of satisfaction of that indebtedness was made on the books of the bank. The "debit slip" seems to have been the only record evidence kept by the bank of the acts of the cashier and of complainant in this connection.

A fair test, in the premises, is found in this inquiry: Could the bank, pending the period between the time when the debit slip memorandum was made and the date of the check (May 14, 1908), which was unquestionably accepted as payment, have prevailed, in an action against the Smiths on the notes, on a plea of payment by them, supported by the evidence presented on this issue in this cause? We think so. The burden would, then, have been on the Smiths to show an acceptance, by the bank, of complainant's sole responsibility for the indebtedness evidenced by the notes—an express acceptance thereof, in discharge of that indebtedness. Again, if the bank had brought, pending the stated period, suit on the notes, against the principals and the indorser, could the indorser (complainant) have prevailed, on the evidence before us, on a plea of payment by him, We think not. Again, if the bank had failed, during the period stated, would the indebtedness evidenced by the notes have been an asset to the institution? We think so.

For the reasons indicated, drawn from the evidence, we, therefore, feel impelled to conclude that at the time

this bill was filed the indebtedness, evidenced by the Smith notes, was not paid, satisfied; though that was accomplished on May 14, 1908.

In conformity to the doctrine stated in the first part of the opinion, the court correctly ruled the pleas of the statute of limitations and adverse possession to be insufficient; the cause of complainant's action not having accrued until the payment of the indebtedness, evidenced by the Smith notes, was effected on May 14, 1908.

The plea of Rosa M. Smith, asserting that the land conveyed to her was the homestead of J. M. Smith, and, hence, exempt from liability for the satisfaction of the indebtedness in question, and also whether voluntary or not, exempt from subjection, by complainant, to his reimbursement for the sum expended by him in discharging that indebtedness should have been sustained, instead of ruled insufficient.—*Bank of Talladega v. Browne* 128 Ala. 560, 29 South. 552, among others. Whether it could have been supported in the proof is, of course, another inquiry.

The insistence, for appellee, that the plea last referred to did not answer the whole bill, cannot be approved. It did answer, fully, the bill in the aspect that it assumed to impeach the conveyance to Rosa M. Smith. We do not understand that one of several respondents, impleaded as here, must, in order to state a good defense by plea, answer separable, nonapplicable to him, features of the bill.

If the true date of the transaction, whereby J. M. Smith conveyed a part of his land to M. M. Smith, was December 6, 1896—a date prior to the time complainant became, originally, the indorser on the Smith notes —it would be immaterial whether that conveyance was with or without consideration, for the obvious reason that at that date complainant was not even a contingent

[Roquemore & Hall v. Mitchell Bros., et al.]

creditor. However, if actual fraud, to which both J.
M. and M. M. Smith were parties (*Rike v. Ryan,* 147
Ala. 497, 41 South. 959), infected the transaction at the
time it was effected, with anticipatory intent to defraud
subsequent creditors, the conveyance is void and inop-
erative.

Since payment of the indebtedness by the surety had
not been affected before this suit was begun, the decree
below must be reversed, and one will be here entered
dismissing the bill without prejudice.

Reversed and rendered.

DOWDELL, C. J., and MAYFIELD and SAYRE, JJ., con-
cur.